COHEN MILSTEIN

Michael Eisenkraft
Partner
meisenkraft@cohenmilstein.com

April 4, 2024

**VIA ECF**
The Honorable Zahid N. Quraishi
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: *Lewandowski v. Johnson & Johnson et al.*, No. 3:24-cv-00671-ZNQ-RLS (D.N.J.)

Dear Judge Quraishi,

Plaintiff submits this response to Defendants' letter brief (ECF 37) pursuant to Your Honor's Judicial Preferences and the stipulated Order dated March 1, 2024 (ECF 30).

## Background

ERISA protects the integrity of employee benefit plans and the pocketbooks of plan beneficiaries by imposing duties on plan fiduciaries that are "the highest known to the law." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 333 (3d Cir. 2019). One of the most fundamental of these fiduciary duties is a duty to prudently monitor plan costs and ensure that they are reasonable. *Id.* at 328.

Plaintiff alleges that Defendants spectacularly failed this basic duty with respect to the prescription-drug program in Johnson & Johnson's Health Plan ("Plan"). Defendants allowed one of the Plan's vendors—its pharmacy benefit manager ("PBM")—to charge the Plan and its beneficiaries exorbitant prices for prescription drugs. *See* ECF 1 ¶¶ 92-135. As one example, the Plan's PBM was allowed to charge **$10,240** for a drug that costs only $82 to acquire. *Id.* ¶¶ 110-11. The Complaint provides many other examples as well. *Id.* ¶¶ 98-118. Defendants' agreement to these prices is a clear breach of their fiduciary duty to monitor and control plan costs. Moreover, the Complaint alleges numerous other fiduciary failures: allowing the selection of a PBM to be guided by consultants and/or brokers with conflicts of interest, *id.* ¶¶ 95-96; agreeing to steer Plan beneficiaries toward the PBM's mail-order pharmacy, even though that pharmacy charges higher prices than other pharmacies, *id.* ¶¶ 122-27; and failing to disincentivize the use of high-priced branded drugs in favor of lower-priced generics, *id.* ¶¶ 128-131.

## Argument

### I. Plaintiff Has Standing to Bring This Action

Defendants contend that Plaintiff—an active participant in the Plan—lacks standing to sue because she "has received all of the benefits to which she is entitled under the Plan" and was not "harmed by the challenged conduct." ECF 37 at 2. This argument is specious. Plaintiff's beef is not that Defendants denied her prescription drug benefits; she makes no claim for benefits under 29 U.S.C. § 1132(a)(1)(B). Rather, Plaintiff alleges that Defendants failed to monitor the costs paid for prescription drugs through the Plan and ensure that those costs were reasonable. Plaintiff has a personal stake in these issues as a participant in the Plan who has paid monthly premiums for prescription-drug coverage and out-of-pocket amounts for co-pays, co-insurance, and deductibles for her prescriptions—all in amounts inflated by Defendants' conduct. *See* ECF 1 ¶¶ 11, 24, 173. Her prescription drug benefit is no "free lunch."

1

This case differs markedly from *Thole v. U. S. Bank, N.A.*, 140 S. Ct. 1615 (2020). *Thole* involved pension benefits (not health or drug benefits), and the plaintiffs did not claim that they were charged excess amounts in connection with those benefits. Rather, their claim centered on investment losses sustained by U.S. Bank's pension plan–losses that were not passed through to participants in any way. *See id.* at 1618-19. The Court held that the plaintiffs had no injury-in-fact because they had been promised, and received, a fixed pension regardless of the performance of the plan's underlying investments. *Id.* at 1619-20. Here, by contrast, Plaintiff *does* allege a monetary injury, as she is directly responsible for a portion of her prescription drug costs and monthly premiums. Accordingly, she has standing to sue. *See Grasso v. Katz*, 2023 WL 4615299, at *2 (3d Cir. July 19, 2023) ("The injury in fact is plain enough. [Plaintiff] alleges he … incurred 'inordinate expenses'"); *Acosta v. Bd. of Trs. of Unite Here Health*, 2023 WL 2744556, at *3 (N.D. Ill. Mar. 31, 2023) (finding plaintiffs had standing to sue based on similar allegations, and rejecting "Defendants' attempts to fit these facts to *Thole*").[1]

Defendants' other cited cases are also inapposite. In *Knudsen v. MetLife Grp. Inc.*, 2023 WL 4580406 (D.N.J. July 18, 2023) (appeal pending), the only cited case from within the Third Circuit, the "Plaintiffs [did] not allege that they … had to pay higher costs[.]" *Id.* at *2. Rather, they focused exclusively on "drug rebates" that went to the plan sponsor. *Id.* In *Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 2020 WL 5994957 (E.D.N.Y. Oct. 9, 2020), the plaintiffs also focused on an arrangement that was "designed to refund benefit dollars to the employer defendants," *id.* at *1, rather than actual out-of-pocket costs incurred by the plaintiffs. In *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F. 4th 517 (9th Cir. 2023), the allegations similarly focused on "commissions" that were paid to the operator and administrator of a multiple-employer welfare arrangement, not excessive costs. Finally, in *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857 (D. Minn. 2021), the issue involved the Defendant's "use of cross-plan offsetting," *id.* at 859, but "none of the plaintiffs even allege[d] that he ... incurred a healthcare expense." *Id.* at 865.

Defendants also argue (without caselaw support) that Plaintiff lacks standing because she does not allege that she paid for "42 generic-specialty drugs" highlighted in the Complaint. ECF 37 at 2. But this is irrelevant. As Defendants acknowledge, "[t]he gravamen of her claims is that the Plan fiduciaries allowed participants to be charged excessive prices for 'prescription drugs *in general*[.]'" *Id.* (emphasis added). Her claims are *not* limited to generic-specialty drugs, nor is she required to limit her claims in that manner. *See, e.g.*, *Boley v. Universal Health Servs., Inc.*, 36 F. 4th 124, 131-32 (3d Cir. 2022) (plaintiffs were not required to limit their claims to just the specific investments in which they personally invested); *Sweda*, 923 F.3d at 334 n.10 (same). Plaintiff explicitly alleges that she "suffered injuries as a result of Defendants' mismanagement of the Plans," ECF 1 ¶ 189, and explains how. *See id.* ¶¶ 74-77, 173, 198, 206.[2]

## II. Plaintiff States Plausible Breach of Fiduciary Duty Claims Against Defendants

One of a plan fiduciary's core responsibilities is monitoring plan costs and ensuring that they are reasonable. *See supra* at 1 (citing *Sweda*, 923 F.3d at 328); *see also* Restatement (Third)

---

[1] As in *Acosta*, Plaintiff here alleges that any increased plan expenses borne by her employer will result in a decrease in her wages. *See* ECF 1 ¶¶ 77, 198. This additional basis for standing is further supported by *Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 477-78 (E.D.N.Y. 2022) (distinguishing *Thole* and finding "Plaintiffs have suffered harm in the form of lower wages").

[2] Even if Plaintiff had not alleged a monetary injury sufficient to seek monetary relief, she would still be entitled to seek injunctive relief as a participant in the Plan. *See, e.g.*, *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003).

of Trusts § 88 cmt. a (2007) ("Implicit in a trustee's fiduciary duties is a duty to be cost-conscious."). Plaintiff's allegations that Defendants allowed the Plan and its participants to pay excessive drug charges of up to 10,000% above a reasonable amount is more than sufficient to state a claim. Indeed, if these allegations are not sufficient, it is hard to fathom what *would* be.

Defendants invite reversible error by asking the Court to dismiss these claims. *See Hughes v. Nw. Univ.*, 142 S. Ct. 737, 741 (2022) (holding district court erred in dismissing ERISA action alleging that defendants "failed to monitor and control [] fees …, resulting in unreasonably high costs to plan participants"). Although the fiduciary inquiry ultimately focuses on "process," ECF 37 at 3, it is black-letter ERISA law that at the pleading stage, the Court may reasonably infer that Defendants' process for managing Plan costs was flawed based on the facts alleged. *See, e.g.*, *Sweda*, 923 F.3d at 332; *Johnson v. PNC Fin. Servs. Grp., Inc.*, 2022 WL 973581, at *5-6 (W.D. Pa. Mar. 31, 2022).[3] It is not necessary at this stage to "directly allege[]" the ways in which Defendants' process was deficient, *id.*, and in any event, Plaintiffs have done so. *See, e.g.*, ECF 1 ¶¶ 7, 95, 132-135, 198, 205. Defendants' "explanation" for the high costs (ECF 37 at 3) does not save them from Plaintiff's claims. Third Circuit law is clear that an ERISA plaintiff is <u>not</u> required to "rule out every possible lawful explanation" for the challenged conduct. *Sweda*, 923 F.3d at 326 (quoting *Braden*, 588 F.3d at 597). In any event, given the extreme overpayments alleged in the Complaint, it strains credulity for Defendants to argue that "[they] got the best overall deal they could," ECF 37 at 3,[4] and the Complaint expressly alleges otherwise, ECF 1 ¶ 120.

Finally, Defendants attack the specificity of Plaintiff's allegations, relying on out-of-Circuit authority. *See id.* However, "[t]his approach bucks the Third Circuit's" pleading standards. *McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870, at *6 (D.N.J. Apr. 13, 2021) (citing *Sweda*, 923 F.3d at 331). Regardless, Plaintiff's detailed, 75-page Complaint does present "apples to apples" cost comparisons to (1) the exact same drugs (ECF 1 ¶¶ 3-4, 98, 100-112, 115-118, 123, 126); (2) equivalent generic drugs (*id.* ¶¶ 124, 128-131); and (3) similar plans (*id.* ¶¶ 158-172). This is sufficient by any standard.

### III. Plaintiff Also States a Claim for Failure to Comply with Her Request for Documents

Plaintiff also states a valid claim that she requested "all plan documents" through Defendants' online messaging portal, but Defendants failed to timely provide those documents in violation of 29 U.S.C. § 1024(b)(4). ECF 1 ¶ 176. Defendants' unsupported assertion that an online message is not a "written" request is meritless. *See Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 146 (3d Cir. 2007) ("[T]he touchstone is whether the request provides the necessary clear notice to a reasonable plan administrator[.]"); *Futterman v. United Emp. Benefit Fund*, 2021 WL 5163302, at *4 (N.D. Ill. Nov. 5, 2021) ("An email is plainly a form of written communication.").

\* \* \*

For these reasons, the anticipated motion to dismiss is meritless. Further, a motion to strike the jury demand would be premature. The parties are negotiating a stipulation as to this issue.

---

[3] "Courts recognize that 'ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'" *Johnson*, 2022 WL 973581, at *6; *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). That is especially so here, where Defendants have resisted pre-litigation requests for documents. Indeed, Defendants still refuse to turn over their PBM contract and other key documents.

[4] Defendants suggest that "J&J has every incentive to negotiate the best overall deal" for drug pricing because it bears part of the costs. ECF 37 at 1, 3. However, "[t]he law expects more than good intentions. 'A pure heart and an empty head are not enough.'" *Sweda*, 923 F.3d at 329.

3

        Respectfully,

        /s/ *Michael Eisenkraft*
        Michael Eisenkraft

cc:    Defendants' counsel of record (via ECF)