Jeffrey S. Chiesa
Ronald L. Israel
Kathryn Pearson
CHIESA SHAHINIAN &
GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 325-1500
jchiesa@csglaw.com
risrael@csglaw.com
kpearson@csglaw.com

Mark B. Blocker (*pro hac vice*)
Scott D. Stein (*pro hac vice*)
Caroline A. Wong (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
mblocker@sidley.com
sstein@sidley.com
caroline.wong@sidley.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANN LEWANDOWSKI, on her own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSON & JOHNSON, THE PENSION & BENEFITS COMMITTEE OF JOHNSON & JOHNSON, PETER FASOLO, WARREN LUTHER, LISA BLAIR DAVIS, and DOES 1-20, <br><br> Defendants. | Case No. 3:24-cv-00671 <br><br> **ORAL ARGUMENT REQUESTED** |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND STRIKE THE JURY DEMAND

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ....................................................................................4

      A.   The Plan. ....................................................................................4

      B.   The Plan's Prescription Drug Benefit. ..............................................5

      C.   The Role of ESI. .........................................................................5

      D.   Plaintiff's Participation in the Plan. .................................................6

      E.   The Complaint. ...........................................................................7

ARGUMENT ...........................................................................................................7

   I.   Plaintiff Lacks Article III Standing for the Fiduciary Duty Claims. ........7

      A.   Plaintiff Lacks Article III Standing Because She Received All of the Benefits She Was Entitled to Receive Through the Plan. ......8

      B.   Plaintiff Does Not Allege that She Paid for Any of the Allegedly Overpriced Drugs. ...........................................................12

   II.   The Complaint Fails to State a Plausible Claim Under Rule 12(b)(6)....15

      A.   Counts I and II Should Be Dismissed Because Plaintiff Does Not Plausibly Allege that Defendants Had an Imprudent Process for Negotiating Pharmacy Benefit Manager Services. ......17

      B.   Count III Should Be Dismissed Because Plaintiff Does Not Allege that She Made a Written Request Under 29 U.S.C. § 1024(b)(4)....................................................................22

   III.   The Court Should Strike the Jury Demand Because There Is No Right to a Jury Trial for the Statutory Claims Asserted Here. ................24

CONCLUSION ......................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases** **Page(s)**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ..................................................................19

*Alexander v. Primerica Holdings, Inc.*,
  819 F. Supp. 1296 (D.N.J. 1993) ...........................................................24

*Bafford v. Northrop Grumman Corp.*,
  994 F.3d 1020 (9th Cir. 2021) ...............................................................23

*Bair v. General Motors Corp.*,
  895 F.2d 1094 (6th Cir. 1990) ...............................................................25

*Blake v. Unionmutual Stock Life Ins. Co.*,
  906 F.2d 1525 (11th Cir. 1990) .............................................................25

*Boley v. Universal Health Servs., Inc.*,
  36 F.4th 124 (3d Cir. 2022) ...................................................................14

*Cohen v. Independence Blue Cross*,
  820 F. Supp. 2d 594 (D.N.J. 2011) ........................................................24

*Cox v. Keystone Carbon Co.*,
  861 F.2d 390 (3d Cir. 1988) ...................................................................24

*Cunningham v. Cornell Univ.*,
  2018 WL 4279466 (S.D.N.Y. Sept. 6, 2018) .........................................25

*Finkelman v. NFL*,
  810 F.3d 187 (3d Cir. 2016) ...................................................................13

*Glanton ex. rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
  465 F.3d 1123 (9th Cir. 2006) ...............................................................11

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
  858 F. App'x 432 (2d Cir. 2021) ...........................................................12

*Grasso v. Katz*,
  2023 WL 4615299 (3d Cir. July 19, 2023) .............................................11

*Horvath v. Keystone Health Plan E., Inc.*,
   333 F.3d 450 (3d Cir. 2003) ........................................................10, 15

*Huber v. Simon's Agency, Inc.*,
   84 F.4th 132 (3d Cir. 2023) ........................................................13, 15

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)........................................................................9

*Kairys v. Southern Pines Trucking, Inc.*,
   75 F.4th 153 (3d Cir. 2023) ................................................................24

*Knudsen v. MetLife Grp., Inc.*,
   2023 WL 4580406 (D.N.J. July 18, 2023) ...........................11, 12, 15

*Krutchen v. Ricoh USA, Inc.*,
   2022 WL 16950264 (E.D. Pa. Nov. 15, 2022) ...........................18, 19

*Lewis v. Gov't Emps. Ins. Co.*,
   --- F.4th ---, 2024 WL 1611865 (3d Cir. Apr. 2, 2024)....................11

*Lipani v. Aetna Life Ins. Co.*,
   2023 WL 3092197 (D.N.J. Apr. 26, 2023)........................................4

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985)........................................................................20

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ....................................................17, 18

*Mator v. Wesco Distrib., Inc.*,
   2022 WL 3566108 (W.D. Pa. Aug. 18, 2022)...........................18, 19

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ............................................................18

*McCaffree Fin. Corp. v. ADP, Inc.*,
   2023 WL 2728787 (D.N.J. Mar. 31, 2023) ...........................17, 18, 19

*McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
   2011 WL 4455994 (D.N.J. Sept. 23, 2011)......................................23

*Pane v. RCA Corp.*,
   868 F.2d 631 (3d Cir. 1989) ...............................................................................24

*Perelman v. Perelman*,
   793 F.3d 368 (3d Cir. 2015) ...............................................................................10

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012) ...........................................................................7, 8

*Scott v. UnitedHealth Grp., Inc.*,
   540 F. Supp. 3d 857 (D. Minn. 2021)...............................................................12

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..............................................................................................8

*Sweda v. Univ. of Pennsylvania*,
   923 F.3d 320 (3d Cir. 2019) .............................................................14, 18, 19

*Thole v. U.S. Bank, N.A.*,
   140 S. Ct. 1615 (2020)...............................................................................*passim*

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)......................................................................................13, 15

*White v. Chevron Corp.*,
   752 F. App'x 453 (9th Cir. 2018) ......................................................................21

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
   62 F.4th 517 (9th Cir. 2023) ..............................................................................12

## Statutes and Regulations

29 U.S.C. § 1024(b)(4).....................................................................................*passim*

29 U.S.C. § 1025(a) ................................................................................................23

29 U.S.C. § 1104(a) ..................................................................................................7

29 U.S.C. § 1132(c)(1)......................................................................................22, 25

29 C.F.R. § 2575.502c-1 ........................................................................................22

Defendants Johnson & Johnson ("J&J"), the Pension & Benefits Committee of Johnson & Johnson, Peter Fasolo, Warren Luther, and Lisa Blair Davis (together, "Defendants") respectfully submit this brief in support of their motion to dismiss the Class Action Complaint (Dkt. 1, the "Complaint") and strike the jury demand.

## INTRODUCTION

Johnson & Johnson is an innovative medicine and medical technology company with more than 130,000 employees worldwide. It proudly offers its employees an industry-leading benefits package, which includes robust medical, retirement, and other benefits ranging from adoption assistance and caregiver leave to mental health programs, military service benefits, and more.

As part of this benefits package, J&J sponsors the Johnson & Johnson Group Health Plan (the "Plan"), an optional benefits program through which J&J provides its employees with medical, dental, vision, and prescription drug coverage. Although employees who participate in the Plan contribute toward the cost of these benefits, J&J covers the vast majority of the costs. In 2022, for example, J&J contributed more than $800 million to the Plan – several multiples more than the total employee contributions. Accordingly, J&J has every incentive to obtain these benefits for low prices.

This case focuses on only one component of the Plan: the prescription drug benefit. The Plan offers generous prescription drug coverage. In general, after a

participant meets her annual deductible, the Plan covers at least 80% of her prescription drug costs, and the participant pays no more than $125 for any prescription – even for specialty prescriptions that would otherwise cost her hundreds or thousands of dollars per fill. To administer the prescription drug component of the Plan, J&J has negotiated a contract with Express Scripts, Inc. ("ESI"), one of the three largest pharmacy benefit managers in the United States. As a pharmacy benefit manager, ESI creates pharmacy networks where plan participants can obtain prescription drugs, negotiates prices for those drugs, and manages the day-to-day operation of prescription drug programs.

Plaintiff began participating in the Plan after she was hired in 2021. She brings this suit under the Employee Retirement Income Security Act of 1974 ("ERISA"). Unlike the typical ERISA plaintiff, however, she does not claim that she was denied any benefits under the Plan. Instead, she asserts a novel theory: In Counts I and II, Plaintiff claims that J&J breached ERISA's duty of prudence by entering into an agreement that allowed ESI to charge excessive prices for certain prescription drugs. In particular, the Complaint focuses on the cost of 42 generic specialty drugs, and alleges that cheaper prices were available through online or neighborhood pharmacies. In Count III, Plaintiff also claims that J&J's Pension & Benefits Committee (the "Committee") violated ERISA by failing to give her a Plan document that she requested. All of the claims should be dismissed.

***First***, Plaintiff lacks Article III standing to assert the prudence claims. She received all of the benefits she was contractually entitled to receive – that is, prescription drug benefits at the cost and under the terms defined in the Plan documents. Under *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615 (2020), she therefore cannot show an injury-in-fact traceable to Defendants' alleged imprudence. Moreover, Plaintiff does not allege that she paid for – or was even prescribed – any of the allegedly overpriced drugs referenced in her Complaint. That is an additional reason why she lacks the concrete personal injury that Article III requires.

***Second***, the Complaint fails to state a claim. To adequately plead Counts I and II, Plaintiff needs allegations showing that Defendants' process for choosing a pharmacy benefit manager and negotiating drug prices was imprudent. The Complaint has no facts whatsoever about that process, so Plaintiff instead asks the Court to infer imprudence based on the prices of 42 generic specialty drugs – among the thousands of prescription drugs covered by the Plan. But it is not enough to simply point to a fraction of the Plan's covered drugs and claim they were too expensive. Instead, Plaintiff must at least allege that similar plans paid less overall for a comparable prescription drug program. The Complaint does not do that. Plaintiff also does not state a claim as to Count III, because she does not allege a "written request" for documents under 29 U.S.C. § 1024(b)(4).

The Court should also strike the jury demand. Third Circuit authority makes clear that Plaintiff has no right to a jury trial for any of her claims.

## FACTUAL BACKGROUND

**A.    The Plan.**

J&J has more than 130,000 employees worldwide who are engaged in the research and development, manufacture, and sale of healthcare products. *See* Compl. ¶ 12. It provides medical, vision, dental, and prescription drug benefits to its employees, retirees, and their family members through the Johnson & Johnson Group Health Plan. *Id.* ¶¶ 12–13; Ex. A, Plan Doc. §§ 1.02–03 & Schedule A.[1]

The Plan is self-funded, which means that instead of paying premiums to an insurance company, J&J bears direct financial responsibility for the cost of Plan benefits, including prescription drug benefits. *See* Compl. ¶¶ 13–14; *see also* Ex. A, Plan Doc. § 4.02. While Plan participants pay monthly premiums for their coverage, as well as deductibles and co-pays, those employee contributions pale in comparison to J&J's contributions. For example, in 2022, J&J paid more than $800 million in Plan costs, while participants contributed approximately $148 million. Compl. ¶ 14; Ex. B, Summary Annual Rpt. at 1. Because J&J bears these

---

[1] The exhibits attached to this motion are Plan documents, which are judicially noticeable at this stage because "the Complaint expressly references and relies upon the Plan." *Lipani v. Aetna Life Ins. Co.*, 2023 WL 3092197, at *6 (D.N.J. Apr. 26, 2023) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

costs, it has every incentive to negotiate the lowest prices it can get for the overall package of benefits covered by the Plan, including prescription drug benefits.

**B.     The Plan's Prescription Drug Benefit.**

Under the Plan, participants are eligible to obtain virtually any prescription drug approved for use in the United States. Ex. C, Summary Plan Description at 6–9. In general, if participants have met their annual deductible and obtain the drug at a network pharmacy, they pay 20% of the cost of the drug, up to a maximum of $125 per prescription for any 30-day supply. *Id.* at 7. Thus, participants generally pay no more than $125 a month for any prescription (and often much less). *See id.* at 6–9. And nothing prohibits participants from paying for prescriptions outside the Plan if they prefer. *See id.*

**C.     The Role of ESI.**

To administer the prescription drug portion of the Plan, J&J has contracted with Express Scripts, Inc., a pharmacy benefit manager ("PBM"). Compl. ¶ 94. ESI provides services to the Plan that J&J would otherwise have to provide on its own, such as negotiating with pharmacies to establish pharmacy networks where participants can obtain prescriptions at an in-network level of benefits and contracting with drug manufacturers to secure rebates. *See id.* ¶ 40. ESI also processes participants' claims: When a participant fills a prescription, ESI pays the

pharmacy for the prescription (minus any co-pay), then later receives payment from the Plan. *See id.* ¶ 41.

The Plan's prescription drug prices are negotiated between J&J and ESI, as is typical between a plan sponsor and a pharmacy benefit manager. *See id.* ¶ 47. As part of these negotiations, plan sponsors and pharmacy benefit managers often negotiate limits on the amount that a plan pays for drugs by category based on a benchmark price, such as the "Average Wholesale Price" ("AWP"). *Id.* ¶ 45. For instance, to use Plaintiff's examples, plan fiduciaries and ESI might negotiate a limit on prices equal to "AWP minus 85%" for all generic drugs, "AWP minus 20%" for all branded drugs, and "AWP minus 15%" for all specialty drugs. *Id.* ¶ 47.

### D.    Plaintiff's Participation in the Plan.

Plaintiff Ann Lewandowski is a participant in the Plan. She does not allege that she was improperly denied any benefits under the Plan or that she had to pay more than the Plan terms required. In addition, she does not allege that she was prescribed or paid for any of the 42 generic specialty drugs that are the focus of her allegations. *See, e.g.*, *id.* ¶¶ 100–13 (allegations about generic specialty drugs), *id.* ¶¶ 173–86 (allegations about Plaintiff). In fact, the Complaint does not contain a single allegation identifying *any* drug she was prescribed, let alone claiming she overpaid for any such drug.

### E.     The Complaint.

Plaintiff filed this putative class action in February 2024. The Complaint

asserts three claims under ERISA. Counts I and II are duplicative claims for breach

of the fiduciary duty of prudence under 29 U.S.C. § 1104(a) and 29 U.S.C.

§§ 1132(a)(2)–(3) (ERISA Sections 502(a)(2) and 502(a)(3)), based on Plaintiff's

theory that Defendants acted imprudently by purportedly failing to negotiate lower

prices for "prescription drugs in general and generic-specialty drugs in particular."

Compl. ¶¶ 9, 195–207. Count III is a claim for failure to provide a document that

Plaintiff allegedly requested under 29 U.S.C. § 1132(c) (ERISA Section 502(c)).

*See* Compl. ¶¶ 208–11. The Complaint demands a trial by jury. *Id.* ¶ 212.

## <u>ARGUMENT</u>

### I.     Plaintiff Lacks Article III Standing for the Fiduciary Duty Claims.

Under Rule 12(b)(1), Plaintiff "bears the burden of meeting the irreducible

constitutional minimum of Article III standing" as to each claim in the Complaint.

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d

235, 244 (3d Cir. 2012) (quotation marks omitted). To meet this requirement, the

Complaint must allege that (i) Plaintiff suffered an "injury in fact" that is

(ii) "fairly traceable" to the challenged conduct, and (iii) likely to be "redressed"

by a favorable judicial decision. *Id.* Injury-in-fact, the "[f]irst and foremost" of

these elements, requires factual allegations showing that Plaintiff's injury is

"concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). "Concrete" means the injury is "real, and not abstract," and "particularized" means the injury "affect[ed] the plaintiff in a personal and individual way." *Id.* at 339–40.

The Complaint fails to meet these requirements for Counts I and II. The gravamen of those claims is that Defendants acted imprudently by allegedly allowing ESI to charge excessive prices for "prescription drugs in general and generic-specialty drugs in particular." Compl. ¶ 9. But such a claim alleges wasting of the Plan's general assets – not a personal harm to Plaintiff, who does not claim she was denied any benefits to which she is entitled. Plaintiff does not even allege she was prescribed any of the drugs she claims were too expensive. Plaintiff thus cannot show an injury-in-fact traceable to Defendants' alleged imprudence, and the Complaint should be dismissed for lack of Article III standing.

### A.   Plaintiff Lacks Article III Standing Because She Received All of the Benefits She Was Entitled to Receive Through the Plan.

In *Thole v. U.S. Bank*, the Supreme Court held that an ERISA plan participant lacks standing to challenge fiduciaries' alleged mismanagement of the plan if she received all of the plan benefits to which she was entitled. That holding controls and requires dismissal of the prudence claims. Plaintiff "received all of [her] . . . benefits," has "no concrete stake in this dispute," and "therefore lack[s] Article III standing." *Thole*, 140 S. Ct. at 1622.

*Thole* involved a defined-benefit retirement plan. *Id.* at 1618. "[A]s its name implies," a defined-benefit plan "consists of a general pool of assets" and is "one where the employee, upon retirement, is entitled to a fixed periodic payment." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). In other words, the employer bears the risks associated with managing the plan assets, while participants' benefits are defined in the Plan documents and "will not change, regardless of how well or poorly the plan is managed." *Thole*, 140 S. Ct. at 1620. The plaintiffs in *Thole* claimed that their employer violated ERISA by making imprudent decisions about how to manage their defined-benefit plan's assets. *Id.* at 1618. But even though their employer's decisions allegedly caused the plan to sustain losses, the plaintiffs had been paid all of the benefits they were "legally and contractually entitled to receive" under the terms of the plan, and they "would still receive the exact same monthly benefits" regardless of whether they won or lost the suit. *Id.* at 1618–19. The Court thus held that they failed to allege Article III standing. *Id.* at 1621–22.

Plaintiff here lacks standing for the same reasons. Like a defined-benefit retirement plan, the J&J Plan has a general pool of assets held in a trust. Compl. ¶ 14. Participants' benefits, including prescription drug benefits, are paid from those assets. *Id.* Benefits are "not tied to the value of the plan," but instead are "fixed" by the terms of the Plan documents, which operate "in the nature of a

contract." *Id.* And as Plaintiff acknowledges (Dkt. 38 at 1), she received all of the prescription drug benefits she is "legally and contractually entitled to receive" under the Plan's terms. *Thole*, 140 S. Ct. at 1618. She therefore "lack[s] Article III standing" to challenge alleged mismanagement of the Plan. *Id.* at 1622; *see also, e.g.*, *Perelman v. Perelman*, 793 F.3d 368, 374 (3d Cir. 2015) (holding that "even if the defendants' dealings resulted in a diminution in Plan assets, they are insufficient to confer standing").

Plaintiff's conclusory allegation that Defendants' imprudence caused "higher premiums, higher deductibles, higher coinsurance, higher copays, and lower wages" (Compl. ¶¶ 198, 206) is wholly speculative and thus cannot confer standing. The allegation is made solely "on information and belief." *Id.* ¶ 158. The Complaint has no factual allegations about how much Plaintiff paid for premiums, deductibles, co-insurance, or co-pays – much less what those amounts might have been if Defendants had negotiated lower prices for the 42 generic specialty drugs at issue, or otherwise negotiated a different contract with ESI or another pharmacy benefit manager. The allegation is "far too speculative to serve as the basis for a claim of individual loss." *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 457 (3d Cir. 2003) (affirming dismissal of ERISA claims for lack of standing); *see also Lewis v. Gov't Emps. Ins. Co.*, --- F.4th ---, 2024 WL 1611865, at *5 (3d Cir. Apr. 2, 2024) ("Conjecture about how a negotiation might have played out . . . is

not enough" for Article III standing); *Glanton ex. rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (claims that plan sponsor might have reduced co-payments and deductibles if plan expenses were lower were insufficient for Article III standing).[2]

 This Court recently rejected virtually identical allegations and dismissed ERISA claims for lack of Article III standing in *Knudsen v. MetLife Group, Inc.*, 2023 WL 4580406 (D.N.J. July 18, 2023), *appeal pending*, No. 23-2430 (3d Cir.). There, the plaintiffs were participants in a self-funded healthcare plan. *Id.* at *5. They claimed their employer violated ERISA by keeping drug rebates for itself instead of allocating them to the plan, on the theory that "[h]ad the drug rebates been properly allocated, Defendant may have reduced co-pays and co-insurance" paid by participants. *Id.* at *1 (quotation marks omitted). The Court rejected that theory because it was "speculative and conclusory," and it held that the plaintiffs lacked Article III standing because they had "no legal right to the general pool of Plan assets" and did "not contend that they did not receive their promised benefits." *Id.* at *5 (citing *Thole*, 140 S. Ct. at 1620).

---

[2] Plaintiff also cannot rely on *Grasso v. Katz*, 2023 WL 4615299, at *2 (3d Cir. July 19, 2023), which deemed excessive expenses an injury in a completely different context: an abuse of process claim involving expenses arising from responding to subpoenas.

Other courts are in line with *Knudsen*: participants in self-funded healthcare plans lack Article III standing to bring ERISA claims for alleged mismanagement of the plan if they received all of the benefits they were legally entitled to receive under the plan's terms. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523–29 (9th Cir. 2023) (plaintiffs lacked standing because they received "a fixed set of benefits as promised in plan documents"); *Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 858 F. App'x 432, 434 (2d Cir. 2021) (plaintiffs who claimed defendants' conduct resulted in "increased out-of-pocket costs and reduced coverage" had no standing because they "received all of their promised health benefits so far") (brackets omitted); *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 861–65 (D. Minn. 2021) ("Like the plaintiffs in *Thole* . . . plaintiffs do not allege that they have submitted claims for healthcare expenses that have been wrongfully denied."). Applying that line of authority here, this case should be dismissed. Plaintiff has no standing to challenge Defendants' negotiations with ESI because she undisputedly received all of the prescription drug benefits that she was "legally and contractually entitled to receive" under the terms of the Plan. *Thole*, 140 S. Ct. at 1618.

## B.   Plaintiff Does Not Allege that She Paid for Any of the Allegedly Overpriced Drugs.

Even if Article III allowed Plaintiff to pursue claims for benefits beyond what she was entitled to receive under the Plan (it does not), she would still lack

standing for an additional, independent reason: she does not allege that she ever paid for – or was even prescribed – any of the drugs that were allegedly too expensive. *See* Compl. ¶¶ 100–13, 173–86.

It is well-settled that a plaintiff who was unaffected by a defendant's conduct does not have standing to challenge that conduct. Instead, "[o]nly those plaintiffs who have been *concretely harmed*" by a defendant's alleged legal violations have standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021); *see also, e.g.*, *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 152 (3d Cir. 2023) ("[R]egardless of whether the defendant violated the law, the plaintiff must establish that she herself suffered a concrete harm.").

Plaintiff lacks standing under that rule. The primary focus of her Complaint is that 42 generic specialty drugs covered under the Plan were too expensive. *See* Compl. ¶¶ 100–13. But she does not allege that she ever purchased, attempted to purchase, or was prescribed any of the drugs that were allegedly overpriced. She therefore "plainly" did not suffer any injury-in-fact traceable to Defendants' alleged imprudence. *Finkelman v. NFL*, 810 F.3d 187, 195 (3d Cir. 2016) (affirming dismissal for lack of Article III standing as "plainly correct" because plaintiff "never purchased" the allegedly overpriced tickets at issue).

Plaintiff's failure to allege that she personally paid purportedly inflated drug costs distinguishes this case from others in which courts have concluded that a

complaint adequately pleaded standing. For instance, in *Sweda v. University of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019), and *Boley v. Universal Health Services, Inc.*, 36 F.4th 124, 131–32 (3d Cir. 2022), the plaintiffs claimed that investment options offered through their 401(k) retirement plans were imprudent because they allegedly underperformed or charged excessive fees. Critically, however, the plaintiffs in those cases had each invested in one or more of the challenged investments. *Boley*, 36 F.4th at 131–32; *see also Sweda*, 923 F.3d at 334 n.10 ("[T]he complaint . . . indicate[s] that the named plaintiffs invested in the underperforming investment options."). Plaintiff makes no comparable allegation here. She does not allege that she was ever prescribed even a single one of the allegedly overpriced drugs that are challenged in the Complaint.[3]

Plaintiff's allegations that she had to pay purportedly inflated premiums, deductibles, co-pays, and co-insurance or received lower wages as a result of Defendants' conduct (Compl. ¶¶ 198, 206) are also insufficient because, as explained above, they are entirely "speculative and conclusory." *Knudsen*, 2023

---

[3] These cases are also distinguishable because they involved defined *contribution* plans rather than defined-benefit-type plans like those in *Thole* and this case. *Sweda*, 923 F.3d at 324; *Boley*, 36 F.4th at 128. As noted above, the *Thole* and J&J plans provide fixed benefits. The defined contribution plan benefits at issue in *Sweda* and *Boley*, in contrast, reflected the amount of each participant's contributions to her account along with investment gains and losses, the latter two of which depend directly on the performance of the plan investment options chosen by the fiduciaries. *Boley*, 36 F.4th at 128 n.2; *see also Thole*, 140 S. Ct. at 1618.

14

WL 4580406, at *5; *see also Huber*, 84 F.4th at 152 ("[S]tanding cannot be based on speculative injury."). The Complaint does not offer any non-speculative reason to conclude that employees would have received "a higher salary or additional benefits" if Defendants had been able to negotiate lower prescription drug prices for the Plan. *Horvath*, 333 F.3d at 456–57.

Finally, Plaintiff's other two theories of imprudence fail for similar reasons. The Complaint asserts that Defendants mismanaged the Plan by "agreeing to steer beneficiaries toward Express Scripts' mail-order pharmacy Accredo," Compl. ¶ 122, and "failing to disincentivize the use of high-price branded drugs on the Plan's formulary in favor of lower-priced generics," *id.* ¶ 128. But Plaintiff does not allege that she personally was ever "steered" toward Accredo, or that she ever used a branded drug when a lower-priced generic version was available. She thus lacks Article III standing to assert these theories. *TransUnion*, 594 U.S. at 427–28.

## II.   The Complaint Fails to State a Plausible Claim Under Rule 12(b)(6).

The Court should also dismiss the Complaint in its entirety because it fails to state a plausible claim for relief.

First, Counts I and II fail to state a claim because the Complaint does not plausibly allege that J&J had an imprudent process for selecting and negotiating with ESI. Plaintiff has no specific factual allegations about that process. Instead, she asks the Court to infer an imprudent process based on the prices of a tiny

subset of generic specialty drugs, out of the thousands of drugs covered by the Plan. Those allegations are insufficient. To state a claim for imprudence, Plaintiff must allege facts showing that the overall package of prescription drugs that J&J negotiated with ESI was excessively expensive relative to a "meaningful benchmark" – that is, relative to a comparable package of prescription drug benefits for other similarly situated healthcare plans. The Complaint fails to do that. Moreover, any notion of an imprudent process is implausible: When fiduciaries of a self-funded healthcare plan select and negotiate with a pharmacy benefit manager, they have every incentive to negotiate the best overall deal for the plan (*i.e.*, for the universe of thousands of drugs covered), taking into account costs as well as qualitative factors, such as drug access and quality of services. That is especially so here, given that J&J bears direct financial responsibility for the vast majority of the Plan's costs.

Second, Count III does not adequately state a disclosure claim under 29 U.S.C. § 1024(b)(4) (ERISA Section 104(b)(4)). The statute requires a plaintiff to submit a "written request" for Plan documents, and the Complaint does not allege that Plaintiff made the requisite form of request.

**A.      Counts I and II Should Be Dismissed Because Plaintiff Does Not Plausibly Allege that Defendants Had an Imprudent Process for Negotiating Pharmacy Benefit Manager Services.**

ERISA's duty of prudence turns on "process rather than the results." *McCaffree Fin. Corp. v. ADP, Inc.*, 2023 WL 2728787, at *13 (D.N.J. Mar. 31, 2023). Thus, to state a prudence claim, Plaintiff's allegations must show that Defendants used an imprudent process in choosing ESI as the Plan's pharmacy benefit manager, and in negotiating with ESI with regard to categories of drug prices and other pharmacy benefit manager services. *See, e.g.*, *id.*

The Complaint contains no allegations concerning the actual process by which the Plan selected or negotiated with ESI. Instead, Plaintiff asks the Court to infer imprudence based solely on the prices of a cherry-picked group of 42 generic specialty drugs, out of the thousands of prescription drugs covered by the Plan. But "to raise an inference of imprudence through price disparity, a plaintiff has the burden to allege a 'meaningful benchmark.'" *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148–49 (10th Cir. 2023). She is not entitled to an inference of prudence "simply from the allegation that a cost disparity exists." *Id.*; *see also, e.g.*, *McCaffree*, 2023 WL 2728787, at *14 ("A high fee alone does not mandate a conclusion that . . . fees are excessive.") (citation omitted). In the context of plan services, a meaningful benchmark consists of an apples-to-apples comparison between the cost charged to the challenged plan for a set of services and the cost of

those same services to similarly situated plans, to show that similar plans "received the same services for less." *Krutchen v. Ricoh USA, Inc.*, 2022 WL 16950264, at *3 (E.D. Pa. Nov. 15, 2022), *appeal pending*, No. 23-1928 (3d Cir.); *see also, e.g.*, *Mator v. Wesco Distrib., Inc.*, 2022 WL 3566108, at *3 (W.D. Pa. Aug. 18, 2022) (same), *appeal pending*, No. 22-2552 (3d Cir.); *McCaffree*, 2023 WL 2728787, at *14 ("[A]llegations that include a meaningful benchmark are those that plead similarly situated plans received the same services for less."). "[W]ithout a meaningful benchmark," Plaintiff can "not create[] a plausible inference that the decision-making process itself was flawed." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280 (8th Cir. 2022) (emphasis omitted).

Some examples illustrate what constitutes a meaningful benchmark. In *Matney v. Barrick Gold of North America*, the plaintiffs claimed that plan fiduciaries had acted imprudently with respect to fees paid to their plan's recordkeeper, and offered as a benchmark the average recordkeeping fees provided to other plans derived from an industry publication. 80 F.4th at 1143–43. The court, however, rejected the industry publication as a meaningful benchmark because there was no allegation that the comparator plans received similar services or that the figures accurately reflected plan costs. *Id.* at 1157–58. By comparison, in *Sweda v. University of Pennsylvania*, the Third Circuit held that an inference of an imprudent process was warranted when a plan's recordkeeping fees were nearly

$5 million and the plaintiffs alleged that similar plans paid less than $1 million for the same set of services. 923 F.3d at 330; *see also McCaffree*, 2023 WL 2728787, at *14 (discussing *Sweda*).

Here, to provide a meaningful benchmark, Plaintiff must allege not that certain drugs were available at a lower cost, but rather that "similarly situated plans received the same services for less" – that is, paid less for the entirety of a comparable prescription drug program. *McCaffree*, 2023 WL 2728787, at *14. After all, the fiduciaries are acting on behalf of the plan as a whole and its tens of thousands of participants, not a subset of participants interested in specific drugs. But the Complaint contains no allegations even suggesting an appropriate benchmark, focusing instead on a tiny sample of drugs within the much larger prescription drug program. *See, e.g.*, Compl. ¶¶ 3–5, 100–13. Allegations that some drugs might be available for less elsewhere "does not state a claim for breach of fiduciary duty with respect to excessive total plan costs" for prescription drugs. *McCaffree*, 2023 WL 2728787, at *15; *see also, e.g.*, *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022) (affirming dismissal of excessive-fee claims because complaint lacked "detailed allegations providing a sound basis for comparison") (quotation marks omitted); *Krutchen*, 2022 WL 16950264, at *3 (similar); *Mator*, 2022 WL 3566108, at *5–8 (similar).

The Complaint includes allegations about the practices of a handful of other companies' health plans, Compl. ¶¶ 160–72, but none of these allegations suggest that any plan pays less than the J&J Plan for the same services. Most of these allegations simply describe measures that other plans took that resulted in cost savings, but without any suggestion that those plans paid less in total or per person than the J&J Plan for prescription drugs as a whole. Moreover, none of these allegations suggest that the measures taken by other companies are ones that are commonly taken among plan fiduciaries; on the contrary, many of the paragraphs reflect entirely unique and different approaches, and none suggest that these other companies' plans had the same coverage, access, or service needs as the J&J Plan. *See, e.g.*, *id.* ¶ 162 (carve-out for generic specialty drugs); *id.* ¶ 163 (use of a pass-through PBM). In short, these allegations fail to provide a meaningful benchmark that would allow this Court to infer that J&J had a defective process for choosing or negotiating with its Plan's PBM.

Finally, Plaintiff also claims that participants may have suffered lost wages, but that theory fails for the additional reason that it impermissibly seeks extracontractual damages. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147–48 (1985) (ERISA Section 502(a)(2) does not permit recovery of extracontractual damages). Plaintiff's theory appears to be that if the costs of the Plan were lower, J&J would have to contribute less money to the Plan, and might

have used those saved funds to increase employees' wages. But the wages that a Plan sponsor pays to its employees are not Plan benefits or paid from Plan assets, making them extracontractual. This is not a case in which an agreement specifically required plan savings to be used to increase wages; here, the notion that savings might be used to increase wages is pure speculation.

Ultimately, Plaintiff's desired inference of imprudence is fundamentally implausible. There is no common-sense reason to believe the J&J Plan's fiduciaries would not try to obtain the best overall deal for the Plan. On the contrary, J&J has every incentive to negotiate the best overall deal for Plan services because J&J bears the majority of the Plan's healthcare expenditures. *Cf. Thole*, 140 S. Ct. at 1621 (employers "are often on the hook for plan shortfalls," so "the last thing a rational employer wants or needs is a mismanaged [benefits] plan"). Consistent with those incentives, the obvious alternative explanation for the fact that some drugs allegedly have high prices is that those prices were simply part of the best overall deal Defendants could negotiate for the drug program as a whole. *See White v. Chevron Corp.*, 752 F. App'x 453, 454–55 (9th Cir. 2018) (affirming dismissal of prudence claim because "[s]omething more is needed, such as facts tending to exclude the possibility that [defendants'] alternative explanation is true"). While Plaintiff need not rule out *every* possible explanation for those

21

prices, she must do more than arbitrarily select a handful of drugs in a single discrete category. That is simply not enough to raise an inference of imprudence.

**B.    Count III Should Be Dismissed Because Plaintiff Does Not Allege that She Made a Written Request Under 29 U.S.C. § 1024(b)(4).**

In Count III, Plaintiff claims that the Committee violated Section 104(b)(4) of ERISA, which requires plan administrators to furnish copies of certain plan documents "upon written request of any participant or beneficiary." 29 U.S.C. § 1024(b)(4). If the Plan administrator does not respond to such a written request within 30 days, then Section 502(c) and Department of Labor regulations provide that a participant may be entitled to a penalty of no more than $110 per day, with the decision of whether to award any penalty to be determined in the Court's discretion. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1; *see also* Compl. ¶ 209. Here, Plaintiff alleges that she requested a single document on December 20, 2023, and while she admits that she received a response less than three weeks later (on January 8, 2024), she claims that she was sent the wrong document. Compl. ¶¶ 176–78.

This tempest-in-a-teapot claim – in which the amount at issue is at most $3,410[4] – should be dismissed because the Complaint does not allege facts

---

[4] Plaintiff claims to have made her request on December 20, 2023 (Compl. ¶ 176), which means the Plan administrator's deadline to respond was January 19, 2024. Defendants' counsel, on behalf of the Committee, provided the requested document on February 19, 2024, which is 31 days beyond the deadline. Even if the

showing that Plaintiff's request satisfied the statutory requirements to trigger a potential penalty. Given the text of the statute, it is well-settled that a "written request" is an "essential" element of a Section 104(b)(4) claim. *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2011 WL 4455994, at *7 (D.N.J. Sept. 23, 2011) (citing *Kollman v. Hewitt Assoc.*, 487 F.3d 139, 144 (3d Cir. 2007)). Plaintiff does not allege that she made a written request; she instead alleges that she requested the single document at issue via an online portal on the website of a third-party plan administrator, Alight. *See* Compl. ¶¶ 176, 178 ("Plaintiff requested through the Alight online portal established by Defendants that all plan documents, including the 'General/Administrative Information Plan Details' document, be mailed to her. . . . [She] has not received the 'General/Administrative Information Plan Details' document she requested."). This does not plead a "written request" under the statute.

The "bare allegation that Plaintiff[] used an online platform" to make a request is not enough to satisfy the requirement that such a request be in writing. *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1029–30 (9th Cir. 2021)

---

Court were to impose the maximum penalty of $110 per day, the total penalty would be $3,410. Moreover, the fact that Plaintiff knows her original request was not proper is confirmed by the fact that her counsel in this case sent a formal, written request for documents – with a subject line that read "Request for Plan Documents under 29 U.S.C. § 1024(b)(4)" – on February 20, 2024, the day after Defendants provided the document, and the Committee provided a response within 30 days of that written request.

(discussing the "written request" requirement under another ERISA provision, 29

U.S.C. § 1025(a)). "[A] typed request" would be enough, *id.* at 1030, but that is not

what the Complaint says. *See* Compl. ¶ 176. Plaintiff's failure to "include specific

allegations about the manner in which [she] submitted the[] request" warrants

dismissal of Count III "on the ground that [she] did not allege a written request."

*Bafford*, 994 F.3d at 1030; *see also McDonough*, 2011 WL 4455994, at *7

(dismissing Section 104(b)(4) claim for failure to allege a written request); *Cohen*

*v. Independence Blue Cross*, 820 F. Supp. 2d 594, 608–09 (D.N.J. 2011) (same).

**III.     The Court Should Strike the Jury Demand Because There Is No Right
to a Jury Trial for the Statutory Claims Asserted Here.**

If the Court does not dismiss the Complaint in its entirety, the Court should

strike the Complaint's demand for a jury trial. The Complaint asserts two class-

wide ERISA claims: Count I is brought under Section 502(a)(2) and Count II is

brought under Section 502(a)(3). The Third Circuit has squarely held that there is

no right to a jury trial under either of these provisions. *Pane v. RCA Corp.*, 868

F.2d 631, 636–37 (3d Cir. 1989) (no right under Section 502(a)(2)); *Cox v.*

*Keystone Carbon Co.*, 861 F.2d 390, 393 (3d Cir. 1988) (no right under Section

502(a)(3)); *accord Kairys v. Southern Pines Trucking, Inc.*, 75 F.4th 153, 159 (3d

Cir. 2023) (no right to a jury trial on ERISA claims). District courts applying this

case law have reached the same result, holding that there is no right to a jury trial

with respect to either of the sections on which Counts I and II are based. *See*

*Alexander v. Primerica Holdings, Inc.*, 819 F. Supp. 1296, 1305, 1311 (D.N.J. 1993) (finding the law so "unwavering" and "clear" that it sanctioned the plaintiffs for their "baseless" and "bad faith" jury request).

In holding that there is no right to a jury trial, the Third Circuit is not alone. On the contrary, every circuit to consider the issue has found that there is no right to a jury trial under either Section 502(a)(2) or 502(a)(3). *See, e.g.*, *Blake v. Unionmutual Stock Life Ins. Co.*, 906 F.2d 1525, 1526 (11th Cir. 1990); *Bair v. General Motors Corp.*, 895 F.2d 1094, 1097 (6th Cir. 1990).[5]

In Count III, the Complaint asserts a claim under Section 502(c), which permits a court – not a jury – to use its discretion to award a statutory penalty for a plan administrator's failure to provide certain documents. 29 U.S.C. § 1132(c)(1). Given the Third Circuit's clear holdings that there is no right to a jury trial for any portion of Section 502(a), and given that Section 502(c) plainly states that the determination of whether to award any penalty should be made by the Court, there is no right to a jury trial under that section either. Indeed, Defendants are unaware of any case holding that there is a right to a jury trial for such claims.

---

[5] The only circuit in which this is an open question is the Second Circuit. While the Second Circuit has never held that there is a right to a jury trial for ERISA claims, some district courts have read existing Second Circuit decisions to allow for a jury trial in certain instances. *See, e.g.*, *Cunningham v. Cornell Univ.*, 2018 WL 4279466, at *1 (S.D.N.Y. Sept. 6, 2018). But no court outside the Second Circuit has permitted a jury trial for claims under Section 502(a)(2) or (a)(3).

## **CONCLUSION**

For these reasons, Defendants respectfully request that the Court dismiss the Complaint and strike Plaintiff's jury demand.


Dated: April 19, 2024                              Respectfully submitted,

_/s/ Jeffrey S. Chiesa_
Jeffrey S. Chiesa
Ronald L. Israel
Kathryn Pearson
CHIESA SHAHINIAN &
GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 325-1500
jchiesa@csglaw.com
risrael@csglaw.com
kpearson@csglaw.com

Mark B. Blocker (*pro hac vice*)
Scott D. Stein (*pro hac vice*)
Caroline A. Wong (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
mblocker@sidley.com
sstein@sidley.com
caroline.wong@sidley.com

*Attorneys for Defendants*