

CHIESA SHAHINIAN & GIANTOMASI PC

105 Eisenhower Parkway, Roseland, NJ 07068
csglaw.com

JEFFREY S. CHIESA
Member

jchiesa@csglaw.com

O  973.530.2050             F  973.325.1501

May 24, 2024

**Via ECF**

The Honorable Zahid N. Quraishi
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re:   *Lewandowski v. Johnson & Johnson et al.*, No. 3:24-cv-00671-ZNQ-RLS

Dear Judge Quraishi:

We represent the Defendants in the above matter. We write to request a pre-motion conference regarding Defendants' anticipated motion to dismiss the Amended Complaint (Dkt. 44).

**I.    Background on Johnson & Johnson's Health Benefits Plan and Plaintiff's Claims.**

**The Plan.** Johnson & Johnson ("J&J") has more than 130,000 employees worldwide who are engaged in the research and development, manufacture, and sale of a broad range of products in the healthcare field. *See* Am. Compl. ¶ 13. J&J provides its employees with health benefits through the Johnson & Johnson Group Health Plan (the "Plan"). *Id.* ¶¶ 13–14.

The Plan provides medical benefits to employees and retirees of J&J and its affiliated companies. *Id.* The Plan is self-funded, which means J&J bears direct financial responsibility for the cost of its employees' and retirees' (and their dependents') health-related benefits claims. While participants make some financial contribution toward coverage, J&J provides the vast majority of funding. As shown in the Plan's U.S. Department of Labor Form 5500 for 2022, for example, J&J contributed approximately $820 million in Plan costs, while participants contributed $148 million. *See id.* ¶¶ 15, 192. Accordingly, J&J has every incentive to negotiate the best overall deal for the Plan.

To administer the prescription drug portion of the Plan, J&J contracts with Express Scripts, Inc., a pharmacy benefit manager ("PBM"). *Id.* ¶ 14. Express Scripts provides various services that are necessary to operate the Plan, including negotiating with pharmacies to establish pharmacy networks where beneficiaries can obtain prescription drugs, processing beneficiaries' claims, and contracting with drug manufacturers to secure price reductions. *See id.* ¶ 37.

The Honorable Zahid N. Quraishi
May 24, 2024
Page 2

**Plaintiff's Claims.** Plaintiff Ann Lewandowski, a participant in the Plan, has brought a putative class action relating to the prescription drug portion of the Plan. Her original complaint alleged that the Plan fiduciaries allowed participants to be charged excessive prices for "prescription drugs in general and generic-specialty drugs in particular." Compl. ¶ 9 (Dkt. 1). The Amended Complaint focuses on the same 42 generic specialty drugs at issue in the original complaint, but also challenges a second category of drugs – namely, 14 generic non-specialty drugs. Am. Compl. ¶¶ 6, 116–25. It asserts three claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). Counts I and II are duplicative claims for breach of fiduciary duty and Count III is an individual claim for failure to timely provide requested documents. The Amended Complaint no longer asserts a jury demand.

**II.     Plaintiff Lacks Standing to Bring Counts I and II.**

The Amended Complaint should be dismissed for lack of Article III standing.

First, Plaintiff lacks Article III standing because she has received all of the benefits to which she is entitled under the Plan. In *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), the Supreme Court held that an ERISA plan participant lacks standing to challenge fiduciary conduct if her entitlement to benefits would be unchanged by the lawsuit. In *Thole*, plaintiffs were participants in a defined benefit plan who claimed that the plan's fiduciaries mismanaged their plan in violation of ERISA. *Id.* at 540. The Court held that plaintiffs lacked Article III standing to pursue the claims, for reasons that apply equally here: Plaintiff has received all of the benefits she is entitled to receive under the Plan (in this case, coverage for prescription drugs pursuant to Plan terms), and she is legally and contractually entitled to receive the same benefits as long as she is a Plan participant. Her benefits thus "do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad [plan-related] decisions." *Id.* Thus, regardless of whether Plaintiff were to win or lose this case, she "would still receive the exact same [health] benefits that [she is] already slated to receive." *Id.* at 541; *see also, e.g.*, *Knudsen v. MetLife Grp., Inc.*, No. 2:23-cv-426, 2023 WL 4580406, at *5 (D.N.J. July 18, 2023) (plaintiffs lacked standing because they did "not contend that they did not receive their promised benefits"), *appeal pending*, No. 23-2420 (3d Cir. 2023).

Second, Plaintiff lacks standing to bring claims specific to generic-specialty drugs because she does not allege that she paid for or was prescribed any of these drugs. Plaintiff states only that she paid for generic non-specialty drugs—a different category. Am. Compl. ¶¶ 124, 198–200. Because she has not alleged that she personally was harmed by any alleged conduct relating to generic-specialty drugs, Plaintiff cannot challenge that conduct. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021); *Caltagirone v. N.Y. Cmty. Bancorp, Inc.*, 257 F. App'x 470, 473 (2d Cir. 2007) (plaintiff lacked standing to bring ERISA claims as to one category of investments because she was "not within the group she defines as injured as a result of the alleged fiduciary breaches" relating to that category); *cf. Boley v. Univ. Health Servs., Inc.*, 36 F.4th 124, 131 (3d Cir. 2022) (plaintiffs had standing only because each invested in at least one fund in the category of challenged funds).

The Honorable Zahid N. Quraishi
May 24, 2024
Page 3

### III. Counts I and II Fail to State a Plausible Claim Under Rule 12(b)(6).

Counts I and II fail to state a plausible claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state an imprudence claim, Plaintiff must allege facts supporting a plausible inference that Defendants failed to use a reasonable process in choosing or negotiating with the Plan's PBM. *See, e.g.*, *McCaffree Fin. Corp. v. ADP, Inc.*, No. 20-cv-5492, 2023 WL 2728787, at *13 (D.N.J. Mar. 31, 2023); *Mator v. Wesco Distrib., Inc.*, --- F.4th ---, No. 22-2552, 2024 WL 2198120, at *7–9 (3d Cir. May 16, 2024) (plaintiffs must identify comparators and "plausibly allege that the services purchased were sufficiently similar"). The Amended Complaint asks the Court to infer imprudence with respect to the Plan overall from the cost of a small, cherry-picked group of the thousands of prescription drugs available through the Plan. But "to raise an inference of imprudence through price disparity, a plaintiff has the burden to allege a meaningful benchmark." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148–49 (10th Cir. 2023) (internal quotation marks omitted). Here, this means Plaintiff must allege not that certain individual drugs were available at a lower cost but rather that "similarly situated plans received the same services for less" – that is, paid less for a comparable prescription drug program overall. *McCaffree*, 2023 WL 2728787, at *14. While Plaintiff discusses the practices of a few other entities' health plans, Am. Compl. ¶¶ 175–89, none of these allegations suggest that any group of similar plans pays less than the J&J Plan for the same services.

Ultimately, the obvious and more likely explanation for Defendants' conduct is that they got the best overall deal they could for the entire drug program. Because J&J bears the lion's share of the Plan costs, J&J has every incentive to negotiate the best overall deal for plan pricing and services. *Cf. Thole*, 590 U.S. at 545 (employers "are often on the hook for plan shortfalls," so "the last thing a rational employer wants or needs is a mismanaged [benefits] plan"). While Plaintiff need not rule out *every* possible explanation, she must do more than arbitrarily select a handful of drugs and assert their alleged cost is not "offset" by the prices of any of the Plan's thousands of other drugs, Am. Compl. ¶¶ 126–27. *Wesco*, 2024 WL 2198120, at *6 & n.3 ("[T]he Rules require dismissal when fiduciary defendants offer an alternative explanation for their conduct that is 'obvious,' 'natural,' or simply 'more likely' than the plaintiff's theory of misconduct." (quoting *Iqbal*, 556 U.S. at 680 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567–68 (2007)).

### IV. The Court Should Also Dismiss Count III.

In Count III, Plaintiff claims that J&J's Pension & Benefits Committee violated Section 104(b)(4) of ERISA by failing to timely provide a document she requested via an online portal and others she requested via letters from her counsel. Regarding the first document, Section 104(b)(4) applies only if she made a "written request," 29 U.S.C. § 1024(b)(4), and Plaintiff provides only a bare allegation that her online request was "typewritten," Am. Compl. ¶ 204. Her failure to "include specific allegations about the manner in which [she] submitted the[] request" warrants dismissal. *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1030 (9th Cir. 2021) (discussing the "written request" requirement under another ERISA provision, 29 U.S.C. § 1025(a)); *cf. Bafford v. Admin. Comm. of the Northrop Grumman Pension Plan*, --- F.4th ---, No. 22-55634, 2024 WL 2067884, at *8 (9th Cir. May 9, 2024) (plaintiffs alleged details showing a written request). As for the items requested by letters, Plaintiff identifies only one undisclosed document – a contract with Express

The Honorable Zahid N. Quraishi
May 24, 2024
Page 4

Scripts – and that is not an "instrument[] under which the plan is established or operated" triggering Section 104(b)(4). *See, e.g.*, *Penwell v. Providence Health & Servs.*, No. 19-cv-1786, 2021 WL 1222663, at *4 (W.D. Wash. Mar. 31, 2021) (rejecting requests for "a complete set of each of the contracts or agreements between the Plans and each Network Provider").

                                                                                            Respectfully submitted,

                                                                                            */s/ Jeffrey S. Chiesa*

                                                                                           Jeffrey S. Chiesa

CC:    All counsel of record (via ECF)