**COHEN MILSTEIN**

Michael Eisenkraft
Partner
meisenkraft@cohenmilstein.com

May 31, 2024

**VIA ECF**
The Honorable Zahid N. Quraishi
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: *Lewandowski v. Johnson & Johnson et al.*, No. 3:24-cv-00671-ZNQ-RLS (D.N.J.)

Dear Judge Quraishi,

Plaintiff submits this response to Defendants' second letter brief (ECF 45).

## Background

ERISA protects the integrity of employee benefit plans and the pocketbooks of plan beneficiaries by imposing duties on plan fiduciaries that are "the highest known to the law." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 333 (3d Cir. 2019). One of the most fundamental of these fiduciary duties is a duty to prudently monitor plan costs and ensure that they are reasonable. *Id.* at 328.

Plaintiff alleges that Defendants spectacularly failed this basic duty with respect to the prescription-drug program in Johnson & Johnson's Health Plan ("Plan"). Defendants allowed one of the Plan's vendors—its pharmacy benefit manager ("PBM")—to charge the Plan and its beneficiaries exorbitant prices for prescription drugs. *See* Am. Compl. ("AC"), ECF 44 ¶¶ 91-148. As one example, the Plan's PBM was allowed to charge **$10,240** for a drug that costs only $82 to acquire. *Id.* ¶¶ 114-15. The Amended Complaint provides many other examples as well. *Id.* ¶¶ 103-27. Defendants' agreement to these prices is a clear breach of their fiduciary duty to monitor and control plan costs. Plaintiff also alleges numerous other fiduciary failures: allowing the selection of a PBM to be guided by consultants and/or brokers with conflicts of interest, *id.* ¶ 96; agreeing to steer Plan beneficiaries toward the PBM's mail-order pharmacy, even though that pharmacy charges higher prices than other pharmacies, *id.* ¶¶ 129-34; and failing to disincentivize the use of high-priced branded drugs in favor of lower-priced generics, *id.* ¶¶ 135-138.

## Argument

### I.   Plaintiff Has Standing to Bring This Action

Defendants contend that Plaintiff—an active participant in the Plan—lacks standing to sue because she "received all of the benefits to which she is entitled under the Plan." ECF 45 at 2. This argument is specious. Plaintiff's beef is not that Defendants denied her prescription drug benefits; she makes no claim for benefits under 29 U.S.C. § 1132(a)(1)(B). Rather, Plaintiff alleges that Defendants failed to monitor the costs of prescription drugs through the Plan and ensure that those costs were reasonable. Plaintiff has a personal stake in these issues as a participant in the Plan[1] who has paid monthly premiums for prescription-drug coverage and out-of-pocket amounts for co-pays, co-insurance, and deductibles for her prescriptions—all in amounts inflated by Defendants' conduct. *See* AC ¶¶ 12, 21, 190, 194, 198. Her prescription drug benefit is no "free lunch."

---

[1] Plaintiff remains a participant in the Plan even though J&J terminated her employment after she filed this lawsuit. *See* AC ¶ 12. Plaintiff has elected to continue her coverage under COBRA. *Id.*

1

This case differs markedly from *Thole v. U. S. Bank N.A.*, 590 U.S. 538 (2020). *Thole* involved pension benefits (not health or drug benefits), and the plaintiffs did not claim that they were charged excess amounts in connection with those benefits. Rather, their claim centered on investment losses sustained by U.S. Bank's pension plan—losses that were not passed through to participants in any way. *See id.* at 1618-19. The Court held that the plaintiffs had no injury-in-fact because they had been promised, and received, a fixed pension regardless of the performance of the plan's underlying investments. *Id.* at 1619-20. Here, by contrast, Plaintiff *does* allege a monetary injury, as the Plan's inflated prescription drug costs and monthly premiums are passed on to her. Accordingly, she has standing. *See Grasso v. Katz*, 2023 WL 4615299, at *2 (3d Cir. July 19, 2023) ("The injury in fact is plain enough. [Plaintiff] alleges he … incurred 'inordinate expenses'"); *Acosta v. Bd. of Trs. of Unite Here Health*, 2023 WL 2744556, at *3 (N.D. Ill. Mar. 31, 2023) (finding plaintiffs had standing to sue based on similar allegations, and rejecting "Defendants' attempts to fit these facts to *Thole*").

Defendants' citation to *Knudsen v. MetLife Grp., Inc.*, 2023 WL 4580406 (D.N.J. July 18, 2023) (appeal pending), is also inapposite. In that case, the "Plaintiffs [did] not allege that they … had to pay higher costs[.]" *Id.* at *2. Rather, they focused exclusively on "drug rebates" that went to the plan sponsor. *Id.* The allegations here focus on higher costs borne by Plaintiff and the Plan. This "factual context is paramount." *Mator v. Wesco Distrib., Inc.*, --- F.4th ---, 2024 WL 2198120, at *6 (3d Cir. May 16, 2024); *see also Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

Defendants improperly split hairs in arguing that "Plaintiff lacks standing to bring claims specific to generic-specialty drugs." ECF 45 at 2. This misconstrues both the nature of Plaintiff's claims and applicable law. Plaintiff's claims are based on a single comprehensive PBM contract covering all types of drugs. As Defendants previously acknowledged, "[t]he gravamen of her claims is that the Plan fiduciaries allowed participants to be charged excessive prices for 'prescription drugs *in general*[.]'" ECF 37 at 2 (emphasis added). "Article III does not prevent [her] from representing parties" who were harmed "due to the same decisions or courses of conduct," even if they were prescribed different drugs. *See Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 132 (3d Cir. 2022) (plaintiffs not required to limit their claims to just the specific investments in which they personally invested); *Sweda*, 923 F.3d at 334 n.10 (rejecting argument that plaintiff was limited to challenging investments in specific "tiers"). Furthermore, Defendants' fiduciary breaches resulted in plan-wide overcharges that increased monthly premiums for everyone, regardless of which drugs they were personally prescribed. AC ¶¶ 75-76, 123, 191-94.

## II. Plaintiff States Plausible Breach of Fiduciary Duty Claims Against Defendants

One of a plan fiduciary's core responsibilities is monitoring plan costs and ensuring that they are reasonable. *See supra* at 1 (citing *Sweda*, 923 F.3d at 328); *see also* Restatement (Third) of Trusts § 88 cmt. a (2007) ("Implicit in a trustee's fiduciary duties is a duty to be cost-conscious."). Plaintiff's allegations that Defendants allowed the Plan and its participants to pay excessive drug charges of up to 10,000% above a reasonable amount are more than sufficient to state a claim. Indeed, if these allegations are not sufficient, it is hard to fathom what *would* be.

Defendants invite reversible error by asking the Court to dismiss these claims. *See Hughes*, 595 U.S. at 174 (holding district court erred in dismissing ERISA action alleging that defendants "failed to monitor and control [] fees …, resulting in unreasonably high costs to plan participants"); *Mator*, 2024 WL 2198120, at *6 (vacating district court order dismissing ERISA breach of fiduciary duty claims relating to excessive fees); *Sweda*, 923 F.3d at 340 (same). Although the fiduciary inquiry ultimately focuses on "process," ECF 45 at 3, the Court may reasonably infer that Defendants' process for managing Plan costs was flawed based on the facts alleged. *See, e.g.*,

*Sweda*, 923 F.3d at 332; *Johnson v. PNC Fin. Servs. Grp., Inc.*, 2022 WL 973581, at *5-6 (W.D. Pa. Mar. 31, 2022).[2] It is not necessary at this stage to "directly allege" the ways in which Defendants' process was deficient, *id.*, and in any event, Plaintiff has done so. *See, e.g.*, AC ¶¶ 8, 94, 139-143, 148, 233, 239.

Defendants' "explanation" for the high costs (ECF 45 at 3) does not save them from Plaintiff's claims.[3] Third Circuit law is clear that an ERISA plaintiff is *not* required to "rule out every possible lawful explanation" for the challenged conduct. *Mator*, 2024 WL 2198120, at *6; *Sweda*, 923 F.3d at 326 (quoting *Braden*, 588 F.3d at 597). In any event, given the extreme overpayments alleged here, it strains credulity for Defendants to argue that "[they] got the best overall deal they could." ECF 45 at 3. Plaintiff expressly alleges otherwise, AC ¶¶ 127, 139-48, and her allegations are far more compelling than those deemed sufficient in *Mator*, 2024 WL 2198120, at *10 (fees "two to four times" above benchmark held sufficient to state ERISA claim).

Although Defendants challenge Plaintiff's cost comparisons as inadequate, this "bucks the Third Circuit's" pleading standards. *McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870, at *6 (D.N.J. Apr. 13, 2021) (citing *Sweda*, 923 F.3d at 331). The Amended Complaint presents "apples to apples" comparisons to (1) the exact same drugs (AC ¶¶ 3-4, 103-116, 118-121, 124-125, 130-131, 133); (2) equivalent generic drugs (*id.* ¶¶ 136-138); and (3) alternative PBMs (*id.* ¶¶ 144-147). In addition, Plaintiff alleges that "the Plan's fiduciar[ies] did not negotiate a fee cap or solicit bids [*id.* ¶¶ 55, 94, 98, 143]; the … fee structure caused the Plan's fees to rise when there was no corresponding increase in services [*id.* ¶¶ 53, 140, 143]; and similarly situated fiduciaries requested proposals and negotiated with [PBMs] to keep fees reasonable [*id.* ¶¶175-189]." *See Mator*, 2024 WL 2198120, at *7 (finding similar allegations sufficient). Considered holistically as required, *see id.* at *11 (citing *Sweda*, 923 F.3d at 331), these allegations amply support Plaintiff's claims. She is not obligated to provide "comparisons to other plans," *id.* at *6 (citing *Sweda*), and even if she were, she has done so, *see* AC ¶ 177.

### III. Plaintiff States a Claim for Failure to Comply with Her Request for Documents

Plaintiff also properly states a claim that Defendants failed to timely provide requested documents under 29 U.S.C. § 1024(b)(4). Contrary to Defendants' characterization, Plaintiff alleged both the form and content of her "typewritten" request for "all plan documents," AC ¶ 204, and Defendants' own case confirms that "a typed request … qualifies as a written request." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1030 (9th Cir. 2021). With respect to Plaintiff's subsequent request, Defendants improperly withheld their Express Scripts contract and the Plan's formulary. AC ¶¶ 101, 210. "[D]ocuments are part of a coverage plan if they … describe . . . the operation and administration of the plan" or "specify the basis on which payments are made to and from the plan." *Saltzman v. Indep. Blue Cross*, 384 F. App'x 107, 112 (3d Cir. 2010). *Saltzman* squarely held that "the formulary is a plan document," *id.* at 113, and the Express Scripts contract "specif[ies] the basis on which payments are made to and from the plan," *id.* at 112; AC ¶¶ 93-100.

\* \* \*

For these reasons, Defendants' anticipated motion to dismiss is meritless.

---

[2] "Courts recognize that 'ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'" *Johnson*, 2022 WL 973581, at *6; *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). That is especially so here, where J&J has refused to turn over its PBM contract. *See infra* at § III.

[3] Defendants suggest that "J&J has every incentive to negotiate the best overall deal" for drug pricing because it bears part of the costs. ECF 45 at 1, 3. But "[t]he law expects more than good intentions. 'A pure heart and an empty head are not enough.'" *Sweda*, 923 F.3d at 329.

        Respectfully,

        /s/ *Michael Eisenkraft*
        Michael Eisenkraft

cc:    Defendants' counsel of record (via ECF)