# EXHIBIT A

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1928
_____

KEITH K. KRUCHTEN; ANGEL D. MURATALLA; WILLIAM BEGANI,
individually and on behalf of all others similarly situated,

Appellants

v.

RICOH USA, INC; THE BOARD OF DIRECTORS OF RICOH USA, INC;
RICOH RETIREMENT PLANS COMMITTEE; JOHN DOES 1-30

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-22-cv-00678)
District Judge: Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 9, 2024

Before: SHWARTZ, RENDELL, and AMBRO, <u>Circuit Judges</u>

(Opinion filed: July 24, 2024)

OPINION[*]

AMBRO, Circuit Judge.

Plaintiffs Keith Kruchten, Angel D. Muratalla, and William Begani ("Plaintiffs") brought an Employee Retirement Income Security Act ("ERISA") class action against Defendants Ricoh USA, Inc. ("Ricoh"), the Board of Directors of Ricoh, the Ricoh Retirement Plans Committee, and John Does 1-30 (collectively, "Defendants"). Plaintiffs are former employees who participated in the employer-sponsored defined contribution retirement plan offered by Ricoh (the "Plan"). They allege that the Plan charged excessive recordkeeping and administrative ("RK&A") services fees between 2016 and 2020. The District Court granted Defendants' initial motion to dismiss without prejudice before Plaintiffs submitted a Second Amended Complaint (the "Complaint"), which was also dismissed, this time with prejudice. Its opinion relied in large part on a district court opinion that dismissed a similar ERISA claim. *Mator v. Wesco Distrib., Inc.*, No. 2:21-cv-403, 2022 WL 3566108 (W.D. Pa. Aug. 18, 2022), *rev'd*, 102 F.4th 172 (3d Cir. 2024).

Plaintiffs appeal to us, arguing they stated a claim that Defendants violated the fiduciary duties ERISA imposes on retirement plan administrators. *See* 29 U.S.C. § 1104.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

While this appeal was pending, our Court reversed the opinion on which the trial court relied and clarified the pleading standards for excessive fee claims under ERISA, rejecting the narrow, more stringent standard suggested by the trial court. *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172 (3d Cir. 2024).

Accordingly, considering our Court's precedents and for the reasons that follow, we hold that Plaintiffs plausibly alleged that Defendants breached their duties under ERISA. We therefore reverse the District Court's grant of the motion to dismiss.

The Plan is subject to ERISA. *See* 29 U.S.C. §§ 1002(34), 1003. Accordingly, Defendants were required to monitor the Plan's investment performance and costs, which includes RK&A services fees. 29 U.S.C. § 1104(a)(1)(A)(ii); *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019); *see also Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015) ("Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan."). As Plaintiffs describe in the Complaint, RK&A services (*e.g.*, transaction processing and participant communications) are usually purchased as a bundle for a single price with additional services available on a per-use basis.

Plaintiffs alleged that Defendants breached their fiduciary duties under ERISA by failing to control the Plan's RK&A costs between 2016 and 2020, resulting in millions of dollars in unnecessary expenses for Plaintiffs' retirement accounts. Specifically, Plaintiffs claimed that Defendants had substantial bargaining power due to the Plan's size but failed to use it appropriately to negotiate lower fees. Defendants contracted with Hewitt Associates (later acquired by Alight Solutions) to provide recordkeeping services,

3

and due to the cost of these services, Defendants chose to impose a 0.09% administration fee on all investment options in the Plan. Also, for two of the investment options, the Plan charged additional revenue-sharing fees that drove total recordkeeping fees up to 0.19% and 0.24% of assets. Overall, during the period from 2016 to 2020, the Plan's annual per-participant RK&A fees ranged from a low of $61 to a high of $103.

Plaintiffs' Complaint supported the claim of excessive RK&A fees by comparing the Plan's fees to those paid by other retirement plans. They compiled a list of comparable plans and calculated per-participant RK&A costs in 2018 and 2019 using the information available on public Form 5500 filings. Comparable plans were selected based on the recordkeeper used (all of the recordkeepers were in the top ten nationwide for market share) and plan size (above 13,000 participants and $300 million in assets). These selections aligned with the Plan, which contained between 18,619 to 25,592 participants over the class period, had over $1.9 billion in assets, and used Hewitt Associates (later Alight) as the recordkeeper (number four in market share).

This data showed that, for comparable plans, per-participant RK&A costs ranged from $23 to $36. In addition, Plaintiffs cited caselaw and industry surveys to argue that the industry standard for RK&A fees was around $35 per participant. At the same time, they alleged that the market for RK&A services was competitive and services provided by different recordkeepers were fungible. Thus, they say the Plan's RK&A fees were excessive because they were far greater than those paid by similar plans receiving essentially the same services.

4

The District Court dismissed the Complaint, concluding that the comparisons provided were not meaningful, and therefore the Plan's higher fees did not suggest imprudence. *Krutchen v. Ricoh USA, Inc.*, Civ. No. 22-678, 2023 WL 3026705, at \*2 (E.D. Pa. Apr. 20, 2023). Like the trial court in *Mator*, the District Court believed that Plaintiffs merely compared price tags and did not plead sufficient facts to show that the services provided by the various plans were indeed similar. *Id.* Plaintiffs appeal and contend that our Court's precedents do not support such a narrow reading of Plaintiffs' allegations.[1]

We exercise plenary review when a district court grants a motion to dismiss. *Sweda*, 923 F.3d at 325. In applying the same standard as that court, we must construe the complaint "in the light most favorable to the plaintiff," *id.* (internal quotation marks and citation omitted), to determine whether it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sweda*, 923 F.3d at 325 (quoting *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). Additionally, evaluating plausibility requires a context-specific inquiry that includes the underlying substantive law. *Sweda*, 923 F.3d at 326.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and Title I of ERISA, 29 U.S.C. § 1001, *et seq.* We have jurisdiction under 28 U.S.C. § 1291.

5

Under ERISA, fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope, 29 U.S.C. § 1104(a)(1)(B). When reading complaints, we look holistically across all of the allegations to see if the complaint plausibly alleges the fiduciary violated its duties. *Sweda*, 923 F.3d at 331 (explaining that we must not "pars[e ERISA complaints] piece by piece to determine whether each allegation, in isolation, is plausible") (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). At the same time, we must "give due regard to the range of reasonable judgments a fiduciary may make based on [its] experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

Retirement plan participants can state an ERISA claim if the fiduciary charges excessive fees, fails proactively to solicit bids, or fails to use its market power to bargain for lower fees. *Sweda*, 923 F.3d at 328-29. RK&A services fees can be considered excessive based on factual comparisons to other similar plans. *Mator*, 102 F.4th at 185. For example, the *Mator* plaintiffs compiled a table of RK&A services fees paid by other plans that showed their plan paid fees several times more than what similar plans paid. *Id.* at 180. This factual context suggested that the plan administrator had failed to act prudently and accordingly "nudge[d] the [] claims across the line from possible to plausible." *Id.* at 186.

Here, Plaintiffs have also established a meaningful benchmark to allege plausibly that Plan fees were excessive. Plaintiffs compiled a list of retirement plans and the RK&A services fees they charged and explained why those other plans were comparable.

6

They each had a size of at least 13,000 participants and belonged to providers who were in the top ten in terms of market share. Plaintiffs then included additional allegations about the nature of the RK&A services market. They alleged that all plans above 10,000 participants cited as comparators received the same services, measured by Form 5500 service codes, and that larger plans have greater bargaining power to reduce fees.

Contrary to Defendants' claims, the Complaint's allegations that the RK&A services market is commodified and competitive are not mere "conclusions" that we must reject. *Twombly*, 550 U.S. at 555. We follow several courts in concluding that it is a well pled allegation that must be taken as true at this stage of the case. *See Mator*, 102 F.4th at 186 (taking as true the allegation that the RK&A services market is competitive, and therefore different recordkeepers must provide similar services); *Braden* 588 F.3d at 595 (crediting plaintiff's inference that, due to the competitive nature of the retirement plan market, a large plan could use its bargaining power to obtain access to institutional investment products); *Hughes v. Nw. Univ.* (*Hughes II*), 63 F.4th 615, 632 (7th Cir. 2023) (accepting the allegation that "recordkeeping services are fungible and that the market for them is highly competitive"). While Defendants contend that there are varying types of RK&A services and the charges logically diverge, this is a factual claim that must be determined at a later stage in the case.

In conjunction with market comparisons, allegations of other wrongful behavior with supporting circumstantial evidence help state an ERISA claim. *Sweda*, 923 F.3d at 332. The *Sweda* plaintiffs specifically alleged that the University of Pennsylvania failed to solicit bids, did not monitor plan fees, and neglected to conduct a comprehensive

7

review of the plan's management. *Id.* at 330-31. These allegations were supported by evidence that peer institutions (other universities) had conducted those activities and obtained lower fees for their plans. *Id.* at 331. Similarly, the *Mator* plaintiffs alleged that a competitive bidding process must be undertaken every three to five years and that the defendants had failed to do so for over ten years. *Mator*, 102 F.4th at 180.

Plaintiffs likewise alleged that Defendants did not conduct any efforts to solicit bids from competing recordkeeping providers. This allegation was paired with circumstantial evidence: Defendants had not reasonably scrutinized the Plan's fees because the blanket nine-basis point charge to cover administration costs made all Plan investment options significantly more expensive. Moreover, Plaintiffs highlighted the use of revenue-based fees instead of fixed fees, alleging that the former result in higher expenses for Plan participants without increased services compared to fixed fees. *See Sweda*, 923 F.3d at 339; *Mator*, 102 F.4th at 185 (describing how revenue-based fees can become excessive if not carefully monitored). These allegations about the propriety of revenue-based fees for this Plan, while not enough on their own, also support the claim that Defendants violated their fiduciary duties.

Defendants emphasize potential flaws in the fee comparison calculations made by Plaintiffs, but those errors are not fatal because the Complaint as a whole states a plausible claim. *Mator* addressed this same issue and noted that, at the motion-to-dismiss stage, plaintiffs will necessarily be limited to calculations based on publicly available data. *Mator,* 102 F.4th at 181. Accordingly, even while "allegations [that] are based on incorrect arithmetic . . . are not well-pled[,]" we must still "tak[e] into account all of the

8

well-pled facts." *Id.* at 190. Defendants argue that Plaintiffs' comparator plans are inadequate because those plans include fewer fees (direct only) when compared with Plaintiffs' plan, which includes direct and indirect fees, and that in *Mator* we disregarded the only two plans that had a similar difference. However, we do not dismiss Plaintiffs' claim because, "even taking [calculation] problems into account, . . . the comparators are sufficiently similar to the Plan, to state a claim." *Id.* Moreover, Plaintiffs compiled many smaller plans with fewer participants that also charged lower RK&A services fees per participant than the Plan, which – given Plaintiffs' allegations about the commodified nature of the RK&A services market and the leverage that plan sponsors managing significant assets have to negotiate fees – also supports their claims. As a result, viewing the Complaint as a whole makes it clear Plaintiffs sufficiently allege that the Plan's administrators violated their ERISA duties by paying RK&A services fees significantly higher than they would have if they acted with necessary "care, skill, prudence, and diligence[.]" 29 U.S.C. § 1104(a)(1)(B).

As a final point, Defendants urge distinctions between this case and key precedents such as *Sweda* and *Mator*, but these differences are not material. For example, they assert that *Sweda* and *Mator* contained allegations that fees were at least three times greater than the industry average while the Plaintiffs here only allege a gap of around two times. But, as described above, those cases provide guidance on evaluating the factual context around excessive fees rather than prescribing a particular level where fees are acceptable. Similarly, Defendants overstate the importance of the *Mator* plaintiffs providing comparisons to plans using the same recordkeeper as opposed to only

9

ones using other recordkeepers.  Instead, the lesson from *Mator* is that plaintiffs need to establish that the comparisons they provide are appropriate.  We believe Plaintiffs here satisfied this requirement with factual allegations showing how peer plans were indeed similar.

      Accordingly, we reverse the District Court's order dismissing the Complaint and remand for further proceedings consistent with this opinion.

10