Jeffrey S. Chiesa
Ronald L. Israel
Kathryn Pearson
CHIESA SHAHINIAN &
GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 325-1500
jchiesa@csglaw.com
risrael@csglaw.com
kpearson@csglaw.com

Mark B. Blocker (*pro hac vice*)
Scott D. Stein (*pro hac vice*)
Caroline A. Wong (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
mblocker@sidley.com
sstein@sidley.com
caroline.wong@sidley.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANN LEWANDOWSKI, on her own behalf, on behalf of all others similarly situated, and on behalf of the Johnson & Johnson Group Health Plan and its component plans,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON AND THE PENSION & BENEFITS COMMITTEE OF JOHNSON & JOHNSON,<br><br>Defendants. | Case No. 3:24-cv-00671<br><br>**ORAL ARGUMENT REQUESTED** |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

    I.    Plaintiff Lacks Article III Standing For The Fiduciary Claims. ..............2

        A.    Plaintiff's Payment Of Premiums Does Not Confer Standing. ........2

        B.    Plaintiff's Out-Of-Pocket Costs Do Not Confer Standing...............7

    II.    Plaintiff Fails To State A Claim Under Rule 12(b)(6). ..........................10

        A.    Counts I And II Do Not State A Claim Because Plaintiff Does Not Adequately Allege A Meaningful Benchmark. ......................10

        B.    Count III Does Not State A Claim Because Plaintiff Does Not Allege A Proper Request For Plan Documents..............................14

CONCLUSION ....................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*AARP v. EEOC,*
    226 F. Supp. 3d 7 (D.D.C. 2016)...................................................................5

*Acosta v. Bd. of Trs. of Unite Here Health,*
    2023 WL 2744556 (N.D. Ill. Mar. 31, 2023) ......................................5

*Aetna Inc. v. Insys Therapeutics, Inc.,*
    330 F.R.D. 427 (E.D. Pa. 2019)..............................................................5

*AlphaCard Sys. LLC v. Fery LLC,*
    2023 WL 3506414 (D.N.J. May 17, 2023)........................................13

*Argay v. Nat'l Grid USA Serv. Co.,*
    503 F. App'x 40 (2d Cir. 2012) ..............................................................4

*Askew v. R.L. Reppert, Inc.,*
    2016 WL 447060 (E.D. Pa. Feb. 5, 2016) ........................................15

*Barber v. Lincoln Nat'l Life Ins. Co.,*
    260 F. Supp. 3d 855 (W.D. Ky. 2017)...................................................8

*Bator v. Dist. Council 4,*
    972 F.3d 924 (7th Cir. 2020) ..................................................................4

*City of Columbus v. Trump,*
    453 F. Supp. 3d 770 (D. Md. 2020)........................................................5

*Clemens v. ExecuPharm Inc.,*
    48 F.4th 146 (3d Cir. 2022) ....................................................................9

*Hannan v. Hartford Fin. Servs., Inc.,*
    2016 WL 1254195 (D. Conn. Mar. 29, 2016) ....................................4

*Horvath v. Keystone Health Plan East, Inc.,*
    333 F.3d 450 (3d Cir. 2003) ....................................................................6

*Hughes Aircraft Co. v. Jacobson,*
    525 U.S. 432 (1999)...................................................................................3

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ................................................................5

*Knudsen v. MetLife Grp., Inc.*,
    2023 WL 4580406 (D.N.J. July 18, 2023) ......................................6, 7

*Krutchen v. Ricoh USA, Inc.*,
    2024 WL 3518308 (3d Cir. July 24, 2024)...................................12, 13

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)............................................................................3

*Mator v. Wesco Distrib., Inc.*,
    102 F.4th 172 (3d Cir. 2024) .................................................10, 13, 14

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ............................................................14

*McCaffree Fin. Corp. v. ADP, Inc.*,
    2023 WL 2728787 (D.N.J. Mar. 31, 2023) ................................11, 12

*Morley v. Avaya Inc.*,
    2006 WL 2226336 (D.N.J. Aug. 3, 2006) ........................................15

*Mulder v. PCS Health Sys., Inc.*,
    432 F. Supp. 2d 450 (D.N.J. 2006) ....................................................3

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)............................................................................4

*Perrigo Co. v. AbbVie Inc.*,
    2022 WL 2870152 (3d Cir. July 21, 2022).....................................8, 15

*Saltzman v. Independence Blue Cross*,
    384 F. App'x 107 (3d Cir. 2010) ........................................................3

*Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*,
    2013 WL 3864395 (D.N.J. July 24, 2013) ........................................3

*Taylor v. FAA*,
    351 F. Supp. 3d 97 (D.D.C. 2018).....................................................8

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020) ........................................................................................1, 10

*Tokyo Gwinnett, LLC v. Gwinnett Cnty., Ga.*,
   940 F.3d 1254 (11th Cir. 2019) ...........................................................................8

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .............................................................................................9

**Statutes**

29 U.S.C. § 1002(21)(A) ...........................................................................................3

## <u>INTRODUCTION</u>

The Opposition (Dkt. 55, "Opp.") confirms that Plaintiff lacks standing. It offers two theories of Article III injury: that Plaintiff paid too much for (i) monthly healthcare premiums and (ii) out-of-pocket expenses for prescription drugs. The first theory fails because Plaintiff cannot rely on an alleged injury from non-fiduciary conduct (setting premiums) to conjure up standing for fiduciary claims, and because the purported connection between her premiums and the alleged fiduciary breaches is too speculative. The second theory fails because Plaintiff undisputedly paid the same out-of-pocket amount each year that she would have paid even if the Plan's pharmacy benefit manager, ESI,[1] had agreed to charge $0 for prescription drugs. Without a concrete injury fairly traceable to any alleged fiduciary breaches, Plaintiff is in the same position as the plaintiffs in *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020): she received all the benefits she was entitled to under the Plan, has no concrete stake in this dispute, and thus lacks standing.

The Opposition also confirms that Plaintiff has failed to state a claim. It attacks arguments that Defendants have not made, while not engaging with the argument they did make – that Plaintiff has not alleged the Plan's prescription drug

---

[1] This reply uses the same defined terms as in the Brief in Support of Defendants' Motion to Dismiss the First Amended Class Action Complaint (Dkt. 52, "MTD").

costs overall were excessive relative to a meaningful benchmark of prescription drug costs for similarly situated plans. Plaintiff argues that alleging a meaningful benchmark is not required, and alternatively that she has alleged one. She is wrong on both points. The Third Circuit has made clear that she must allege a meaningful benchmark, and price-tag comparisons for individual drugs are insufficient. Moreover, the broader context of her claims underscores that they are implausible: ESI has significant power over the U.S. prescription drug market as one of three PBMs that control 80% of that market and, without a meaningful benchmark, there is no basis to infer that J&J did anything other than negotiate prudently with ESI to obtain prescription drug benefits in the best interests of participants.

## ARGUMENT

I.   **Plaintiff Lacks Article III Standing For The Fiduciary Claims.**

A.   **Plaintiff's Payment Of Premiums Does Not Confer Standing.**

Plaintiff argues that she has standing because "everyone's premiums increase when overall plan spending increases." Opp. 15. She theorizes that if overall spending had been lower, Defendants might have made a different decision each year about how much to charge for the Plan's premiums. There are two problems with this argument, neither of which is curable by amendment.

First, Plaintiff cannot create standing for ***fiduciary*** claims by pointing to alleged losses from a ***non-fiduciary*** activity. The decisions about which PBM to

2

select and how much participants will pay in premiums are independent decisions, and courts have held that the latter is not a fiduciary decision. Any purported losses from non-fiduciary decisions are not fairly traceable to fiduciary conduct.

ERISA provides that a person is a plan fiduciary only "to the extent" he exercises certain discretionary authority or control over management of the plan. 29 U.S.C. § 1002(21)(A). In other words, "fiduciary status is not an all or nothing concept." *Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*, 2013 WL 3864395, at *4 (D.N.J. July 24, 2013), *aff'd*, 768 F.3d 284 (3d Cir. 2014). The "threshold question" courts therefore must ask is whether the defendant was "acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." *Santomenno*, 768 F.3d at 291–92 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Decisions about plan design are not fiduciary acts. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). Instead, when plan sponsors make decisions about plan design, they are acting in a role "analogous to the settlors of a trust." *Id.* Matters of plan design include decisions about "the form or structure of the Plan," "who is entitled to receive Plan benefits," and "in what amounts." *Mulder v. PCS Health Sys., Inc.*, 432 F. Supp. 2d 450, 459 (D.N.J. 2006) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)).

Setting premiums is a plan design decision and thus is a settlor function, not a fiduciary function. When a plan sponsor sets healthcare premiums, it is deciding

3

"the terms of a plan" and "in what amounts" to provide benefits, *Hughes*, 525 U.S. at 444–45, and thus courts have held that setting premiums and contribution rates is not a fiduciary act. *See, e.g.*, *Bator v. Dist. Council 4*, 972 F.3d 924, 932 (7th Cir. 2020) ("setting the contribution rates" is a settlor function); *Hannan v. Hartford Fin. Servs., Inc.*, 2016 WL 1254195, at \*2–3 (D. Conn. Mar. 29, 2016) (defendant was "not a fiduciary with respect to negotiation of the Plan premiums"), *aff'd*, 688 F. App'x 85 (2d Cir. 2017); *Argay v. Nat'l Grid USA Serv. Co.*, 503 F. App'x 40, 42 (2d Cir. 2012) ("Defendants did not act in a fiduciary capacity in setting premiums"). Plan sponsors are free to charge any amounts for premiums that they see fit. There is no obligation to set premiums at any particular level, or to pass along any savings to the Plan in the form of premium reductions.

Because setting premiums is a non-fiduciary function, Plaintiff cannot predicate standing for her fiduciary claims on allegedly higher premiums.[2] Indeed, Plaintiff cites no case where an alleged injury resulting from non-fiduciary acts conferred standing for fiduciary claims, and this case should not be the first. Her theory contradicts the foundational principle that fiduciaries can be liable only for decisions they make when they "wear the fiduciary hat." *Pegram*, 530 U.S. at 225. A stand-alone fiduciary breach claim challenging the premium amounts would fail

---

[2] This is just as true for premiums that Plaintiff pays under COBRA as for the premiums she paid when she was still a J&J employee. *See* Opp. 17.

because setting premiums is not fiduciary conduct, and there is no reason to let Plaintiff back-door such a claim by trying to trace it to a fiduciary decision.

Second, Plaintiff's premiums cannot create standing because any injury is entirely speculative. Plaintiff assumes that lower costs for the 14 prescription drugs at issue[3] would yield lower premiums, but this is pure speculation: many factors affect premiums beyond that small subset of costs – for example, administrative expenses and non-drug medical costs. Premiums cover ***all*** medical and prescription drug benefits, and Defendants remained free to set them at any amount. This is not a case like *Acosta*, where an agreement expressly provided that employees would receive wage deductions to cover increased plan costs. *Acosta v. Bd. of Trs. of Unite Here Health*, 2023 WL 2744556, at \*2–3 (N.D. Ill. Mar. 31, 2023) (cited in Opp. 15).[4] Here, there is no agreement or formula that governs premiums. Plaintiff cites a graph and claims it shows that premiums were set at a "fixed ratio" of

---

[3] Plaintiff undisputedly was prescribed only these 14 drugs, and not any of the 42 generic specialty drugs in the Amended Complaint. *Compare* MTD 21–23, *with* Opp. 21–24. Thus, at a minimum, she lacks standing to challenge those 42 drugs.

[4] Plaintiff's other cited cases are even further afield. One involved antitrust claims about "higher premiums as a result of the defendants' anticompetitive conduct." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 275 (3d Cir. 2009). Another involved state-law fraud claims, based on allegations that defendants submitted excessive insurance claims. *Aetna Inc. v. Insys Therapeutics, Inc.*, 330 F.R.D. 427, 430 (E.D. Pa. 2019). The other two were administrative law challenges. *City of Columbus v. Trump*, 453 F. Supp. 3d 770, 787 (D. Md. 2020); *AARP v. EEOC*, 226 F. Supp. 3d 7, 18 (D.D.C. 2016). None of those cases have any bearing here.

projected costs. Opp. 16 (citing AC ¶¶ 192–93). But nothing required a fixed ratio – and in fact, the graph shows the opposite (*i.e.*, premiums as a percentage of costs varied over time). If Plan costs had been lower, the fiduciaries could have still charged the same amounts, and it is sheer speculation to claim otherwise.

Courts have rejected similar theories as too speculative. For example, in *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003) – a case the Opposition ignores – plaintiff claimed that defendants caused her employer to overpay for health benefits, and that her employer passed those costs to participants by providing fewer benefits or lower salaries. *Id.* at 453, 457. The Third Circuit rejected that similar theory as "too speculative." *Id.*

Likewise, in *Knudsen v. MetLife Group, Inc.*, 2023 WL 4580406 (D.N.J. July 18, 2023), *appeal pending*, No. 23-2430 (3d Cir.), plaintiffs claimed that defendants' fiduciary breaches harmed them by inflating their co-pays and co-insurance, but the court rejected the theory as too speculative. *Id.* at *5–6. The Opposition argues that the *Knudsen* plaintiffs only offered allegations about the effect the alleged breaches "may" have had on co-pays and co-insurance, but that argument focuses on a single paragraph of the *Knudsen* complaint. Opp. 17–18 (citing *Knudsen v. MetLife Grp., Inc.*, No. 2:23-cv-426, ECF No. 1 ("*Knudsen* Compl.") ¶ 36). In fact, the *Knudsen* plaintiffs relied on the same theory of standing that Plaintiff relies on here – that higher costs led to higher premiums:

6

> **[E]ach year Defendant determines the overall cost of coverage for each medical benefit option**, inclusive of the prescription drug component contained within each option. **Defendant then reduces this figure to a specific contribution or premium** . . . The overall level of premiums and the amount charged to participants is determined **based on the cost of "projected medical claims."** . . . MetLife's transfer of rebates to itself reduced the assets available to provide benefits, **necessarily resulting in higher premiums**.

*Knudsen* Compl. ¶¶ 20, 30 (emphases added); *compare* AC ¶¶ 190–96. Consistent with *Horvath* and *Knudsen*, the Court should reject Plaintiff's theory as speculative, particularly given the many factors that may affect decisions about premiums beyond the projected costs of a handful of (or even all) drugs.

## B.   Plaintiff's Out-Of-Pocket Costs Do Not Confer Standing.

Plaintiff's second theory of standing is that she "incurred greater out-of-pocket expenses for her prescription drugs" as a result of the alleged fiduciary breaches. Opp. 12–13. However, Plaintiff does not dispute that she would have reached her $3,500 total maximum out-of-pocket amount under the Plan each year regardless of prescription drugs costs, and thus drug costs had zero impact on the total amount she paid. *Compare* MTD 18–20, *with* Opp. 19–21.

Plaintiff argues she has standing because the allegedly excessive costs of certain drugs caused her to reach her $3,500 maximum out-of-pocket amount a few months earlier each year than she otherwise would have. Opp. 20. To the extent Plaintiff argues that she lost the time value of her maximum out-of-pocket amount, *id.*, that theory fails because it is nowhere alleged in the Amended Complaint and

of course she "may not amend [her] pleadings by making factual assertions in a brief." *Perrigo Co. v. AbbVie Inc.*, 2022 WL 2870152, at *5 n.12 (3d Cir. July 21, 2022). Even if the Amended Complaint had alleged such a theory, it would be insufficient for standing. Contrary to what the Opposition claims (Opp. 20), "[a]ccepting the lost time value of money as a cognizable constitutional injury is far from well established." *Taylor v. FAA*, 351 F. Supp. 3d 97, 102–03 (D.D.C. 2018). The Third Circuit has never held that it is sufficient, and other courts have confirmed that "conclusory proclamations" about "the lost time value of money" are not enough to show standing, *id.*; *see also, e.g.*, *Tokyo Gwinnett, LLC v. Gwinnett Cnty., Ga.*, 940 F.3d 1254, 1264 (11th Cir. 2019). That is especially so where, as here, those assertions are raised only in a brief and there are "no particularized allegation[s]" supporting them. *Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 862 (W.D. Ky. 2017) (rejecting standing argument about lost time value of benefits denied to ERISA plan participant), *aff'd*, 722 F. App'x 470 (6th Cir. 2018).

In the alternative, Plaintiff contends that even if she lacks standing based on her past out-of-pocket expenses, she still has standing because she purportedly will be "required in the future to pay more out-of-pocket for prescription drugs than she would be required to pay absent Defendants' [alleged] unlawful conduct." Opp. 21 (citing AC ¶ 201). Such a conclusory allegation about hypothetical future harm is

likewise too speculative to confer standing – particularly given that Plaintiff has been unaffected by prescription drug costs for several years. The possibility of future harm is especially remote given that Plaintiff is no longer a J&J employee (after she failed to return to her job for more than six months),[5] might obtain benefits through a new employer's health plan, or might otherwise decide to obtain her prescription drugs outside the J&J Plan. As the Supreme Court has made clear, "mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021). Plaintiff's only cited case confirms that principle, and its facts are readily distinguishable. It involved data breach claims where the plaintiff not only alleged risk of future harm (potential identity theft), but also actual harm: emotional distress and incurred costs in taking steps to mitigate risks arising from the data breach. *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 158 (3d Cir. 2022) (cited in Opp. 21). The Amended Complaint lacks any comparable allegations.

Finally, the Court should give zero weight to Plaintiff's rhetoric about the difficulty of finding a different participant with standing. *See* Opp. 15 n.5. The

---

[5] Contrary to the Opposition's assertion (Opp. 15 n.5), J&J did not "terminate" Plaintiff's employment. Plaintiff began taking unapproved leave in October 2023. In April 2024, when Plaintiff had still failed to return to her job after being on unapproved leave for more than 6 months, J&J sent her a separation letter stating its determination that she had abandoned her position and thus had voluntarily resigned from her employment pursuant to Company policy.

Supreme Court has "long rejected that kind of argument for Article III standing," including in *Thole* itself. 590 U.S. at 544–45 (collecting cases).

## II.    Plaintiff Fails To State A Claim Under Rule 12(b)(6).

### A.    Counts I And II Do Not State A Claim Because Plaintiff Does Not Adequately Allege A Meaningful Benchmark.

The fiduciary claims also should be dismissed under Rule 12(b)(6) because the Amended Complaint does not allege that the Plan's prescription drug costs were excessive relative to a meaningful benchmark – that is, compared to total prescription drug costs for similar plans that received similar services. None of Plaintiff's arguments address that fundamental defect.

First, Plaintiff argues that she is "not required to support her cost allegations with any comparisons to other plans." Opp. 2. That blatantly misstates law. Courts nationwide have held that a complaint must allege a meaningful benchmark to state an excessive fee claim – and, in Plaintiff's own cited case, the Third Circuit confirmed it "agree[s] with [its] sister Circuits' articulation of the relevant law in those cases." *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 188 (3d Cir. 2024) (citing *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278–79 (8th Cir. 2022), and *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164–65 (6th Cir. 2022)). As another judge in this district noted, "courts in this Circuit evaluating a claim for excessive fees" must consider "whether the complaint includes a sound basis for comparison [or] meaningful benchmark to show that the practices of similarly

10

situated fiduciaries for the same services differed." *McCaffree Fin. Corp. v. ADP, Inc.*, 2023 WL 2728787, at *14 (D.N.J. Mar. 31, 2023) (quotation marks omitted).

Second, Plaintiff argues that she has alleged a meaningful benchmark. Opp. 32. But the only other plan she offers as a comparison is Pepsico's health plan, and all she alleges is that ESI charged the J&J Plan on average "four times as much" for the 14 generic non-specialty drugs at issue and "2.3 times as much" for the 42 generic specialty drugs Plaintiff does not allege she ever purchased. AC ¶ 177 (emphases omitted). She alleges nothing about total plan drug costs or whether the plan received similar services. That is not enough to plausibly support an inference of imprudence. "A high fee alone does not mandate a conclusion that [any] fees are excessive." *McCaffree*, 2023 WL 2728787, at *14. Instead, "fees must be evaluated relative to the services rendered." *Id.* (quotation marks omitted). Yet Plaintiff alleges nothing about how the services, plan design, or total costs for the Pepsico plan compare to the J&J Plan. For example, Plaintiff has no allegations about the Pepsico plan's premiums, scope of coverage, or total pricing for covered prescription drugs. Her allegations about how much a customer not using insurance would pay (*see* Opp. 32–33) are insufficient for the same reason: bare price-tag comparisons for a handful of drugs are not enough to support an inference that Defendants acted imprudently with regard to the Plan's comprehensive prescription drug program.

11

Plaintiff argues that she need not make allegations about services "overall," but that argument is incompatible with her own theory of the case. She claims that she is "not alleging individual breaches of fiduciary duty for each prescription drug," but rather seeks to challenge Defendants' alleged "***overall* failures in** selecting, negotiating with, and supervising their PBM." Opp. 23 (emphasis added). To state a claim on that theory, she must allege a "sound basis for comparison," which requires allegations about the overall set of PBM services that were provided to similar plans. *McCaffree*, 2023 WL 2728787, at *14.[6]

The three Third Circuit cases Plaintiff cites – including the recent decision in *Krutchen v. Ricoh USA, Inc.*, 2024 WL 3518308 (3d Cir. July 24, 2024) – only confirm that Plaintiff has failed to state a claim because in each one the complaint alleged a meaningful benchmark. In *Krutchen*, the benchmark consisted of a list of numerous other plans and the fees they charged, and plaintiffs "explained why those other plans were comparable" to their plan and how those comparators "received the same services" as "measured by Form 5500 service codes." *Id.* at *3. In *Mator v. Wesco Distribution, Inc.*, plaintiffs pointed to multiple plans that

---

[6] Contrary to Plaintiff's assertion (Opp. 30 n.11), *McCaffree* does not hold that comparisons should not be made to "overall" packages of services. Instead, it confirms that plaintiffs must make meaningful comparisons that match their theory of imprudence. The *McCaffree* plaintiffs challenged "total plan costs," and the court held that they failed to allege a meaningful benchmark because they did not show that plans with lower total costs were similar. 2023 WL 2728787, at *15.

received an "overlapping constellation of recordkeeping services" and explained how the plans' fees and services compared to those of their own plan. 102 F.4th at 185–86. And in *Sweda v. University of Pennsylvania*, plaintiffs alleged that "similar plans paid [less] for the same services" as their plan. 923 F.3d 320, 330 (3d Cir. 2019).[7] Those are the kinds of allegations the Amended Complaint is missing. Plaintiff only "compared price tags" for a small number of the thousands of prescription drugs covered by the Plan, and that is not enough. *Krutchen*, 2024 WL 3518308, at *2; *see also* Opp. 27–28 (listing allegations about drug costs).

Third, the allegations about Defendants' purported process in negotiating with ESI are insufficient because they lack factual allegations that would make them plausible. *See, e.g.*, AC ¶¶ 94–96, 127–29, 135, 147; *see also* Opp. 7, 28–29. Those allegations, many of which are made on "information and belief," are all unsupported inferences, drawn purely from the prices of certain prescription drugs, and thus the Court should reject them. *See, e.g.*, *AlphaCard Sys. LLC v. Fery LLC*, 2023 WL 3506414, at *4 (D.N.J. May 17, 2023) (rejecting "information and belief" allegations as "conclusory and unsupported"). Allegations that "costs are

---

[7] Moreover, although the allegations in *Sweda* were less detailed than those in *Wesco*, the Third Circuit strongly suggested in *Wesco* that those allegations would no longer be sufficient today. In particular, *Wesco* noted that *Sweda* applied a less-stringent pleading standard, and that "the Supreme Court recently abrogated that specific portion of *Sweda*." *Wesco*, 102 F.4th at 184 n.3 (citing *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022)).

too high" are not enough to provide a "meaningful benchmark" – and "without a meaningful benchmark," Plaintiff has "not created a plausible inference that the decision-making process itself was flawed." *Matousek*, 51 F.4th at 278, 280 (citing *Sweda*, 923 F.3d at 330–32).[8]

At bottom, Plaintiff's claims are implausible. She bases her claims on the prices of a small subset of drugs (56 total), while ignoring the tens of thousands of other drugs, medical benefits, and services the Plan covers – and ignoring that J&J has every incentive to negotiate the best deal it can with ESI since it pays the lion's share of the Plan's costs. *See* MTD 31–32. That is an obvious alternative explanation for the drug prices Plaintiff challenges: even if accurate, those prices represent only a small subset of the costs for services offered through a Plan that is appropriately managed and provides substantial benefits. The Federal Rules "require dismissal when fiduciary defendants offer an alternative explanation for their conduct that is obvious, natural, or simply more likely than the plaintiff's theory." *Wesco*, 102 F.4th at 184 (quotation marks omitted).

### B. Count III Does Not State A Claim Because Plaintiff Does Not Allege A Proper Request For Plan Documents.

Plaintiff's responses regarding the § 1024(b)(4) claim are meritless. As to

---

[8] Plaintiff's argument that she does not need "direct" allegations about Defendants' process (Opp. 2) attacks a strawman. Defendants have not argued that such allegations are required, but instead that factual allegations supporting an inference of an imprudent process are missing. MTD 25–26.

Plaintiff's first request, she alleges she made "a typewritten request through [an] online portal," and Defendants argued this was insufficiently detailed. MTD 33. The Opposition fails to address that; it merely restates the allegation. Opp. 38.

As to the second request, the statute does not require the administrator to provide the Plan's contract with ESI. That contract governs the relationship between the Plan and a third party; it does not inform participants about their benefits. *See, e.g.*, *Morley v. Avaya Inc.*, 2006 WL 2226336, at *18–19 (D.N.J. Aug. 3, 2006). Plaintiff's reliance on *Askew v. R.L. Reppert, Inc.*, 2016 WL 447060, at *12 (E.D. Pa. Feb. 5, 2016) is misplaced because it involved a contract governing the investment of plan assets, not just an arrangement with a third party.

The statute also does not require disclosure of ESI's formulary.[9] *Saltzman v. Independence Blue Cross* does not hold otherwise. The plan documents in that case expressly referred to a formulary in describing the scope of benefits. *Saltzman*, 384 F. App'x 107, 113 (3d Cir. 2010). Plaintiff alleges no similar facts here.

## CONCLUSION

Plaintiff has already had an opportunity to amend her allegations. Because she still lacks standing and fails to state a claim, the Amended Complaint should be dismissed with prejudice.

---

[9] In addition, the Amended Complaint does not allege a request for the formulary, *see* AC ¶¶ 204–09, 242–48, so Plaintiff's argument (raised only in the Opposition) should be disregarded. *See Perrigo*, 2022 WL 2870152, at *5 n.12.

Dated: August 12, 2024                    Respectfully submitted,

                                          */s/ Jeffrey S. Chiesa*
                                          Jeffrey S. Chiesa
                                          Ronald L. Israel
                                          Kathryn Pearson
                                          CHIESA SHAHINIAN &
                                          GIANTOMASI PC
                                          105 Eisenhower Parkway
                                          Roseland, NJ 07068
                                          Telephone: (973) 325-1500
                                          jchiesa@csglaw.com
                                          risrael@csglaw.com
                                          kpearson@csglaw.com

                                          Mark B. Blocker (*pro hac vice*)
                                          Scott D. Stein (*pro hac vice*)
                                          Caroline A. Wong (*pro hac vice*)
                                          SIDLEY AUSTIN LLP
                                          One South Dearborn Street
                                          Chicago, IL 60603
                                          Telephone: (312) 853-7000
                                          mblocker@sidley.com
                                          sstein@sidley.com
                                          caroline.wong@sidley.com

                                          *Attorneys for Defendants*