**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ANN LEWANDOWSKI, *on her own behalf, on behalf of all others similarly situated, and on behalf of the Johnson & Johnson Group Health Plan and its component plans*,

Plaintiff,

v.

**JOHNSON AND JOHNSON,** *et al.*,

Defendants.

Civil Action No. 24-671 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Johnson and Johnson and the Pension & Benefits Committee of Johnson and Johnson (collectively, "Defendants") (the "Motion," ECF No. 51.) Defendants submitted a Brief in support of their Motion. ("Moving Br.," ECF No. 52.) Plaintiff Ann Lewandowski, individually, and on behalf of all others similarly situated (hereinafter, "Plaintiff"), filed a Brief in Opposition ("Opp'n Br.," ECF No. 55), to which Defendants submitted a Reply ("Reply Br.," ECF No. 59). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** the Motion.

---

[1] Hereinafter, all references to Rules refer to the Federal Rules of Civil Procedure unless otherwise noted.

1

I.   **BACKGROUND AND PROCEDURAL HISTORY**[2]

This case arises from various alleged breaches of fiduciary duties and other violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, stemming from purported mismanagement of prescription drug benefits for Johnson and Johnson's employees who were participants in its health benefit plans. (Am. Compl. ¶ 3, ECF No. 44.) Plaintiff, individually and on behalf of a proposed class,[3] seeks (1) damages to enforce Defendants' liability under 29 U.S.C. § 1109 and "to make good to the plans and their participants and beneficiaries," and (2) an injunction enjoining Defendants from breaching their fiduciary duties. (*Id.* ¶ 11.)

A.   **FACTUAL BACKGROUND**

Johnson and Johnson is a medical technologies and pharmaceutical company that sponsors the Salaried Medical Plan and Salaried Retiree Medical Plan (the "Plans") for its current and former employees. (*Id.* ¶ 14.) Plaintiff is a former employee of Johnson and Johnson and is a current participant in the Plans. (*Id.* ¶ 12.) The Pension & Benefits Committee of Johnson and Johnson is the administrator of the Plans. (*Id.* ¶ 16.)

As alleged, "Defendants breached their fiduciary duties and mismanaged Johnson and Johnson's prescription-drug benefits program, costing their ERISA plans and their employees millions of dollars in the form of higher payments for prescription drugs. . . higher premiums . . . higher deductibles . . . higher coinsurance . . . [and] higher copays." (*Id.* ¶ 3.) By way of example of a higher payment for prescription drugs, Plaintiff cites the pricing of a generic drug for multiple

---

[2] For the purposes of considering this Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] The proposed class is defined as: "All persons who were participants in or beneficiaries of any of the Plans from the beginning of the statute of limitations period through judgment in this matter (the "Class Period"). (*See* Am. Compl. ¶ 222.)

sclerosis, for which the Plan pays substantially more than large retail pharmacies charge without insurance. (*Id.*)  Plaintiff alleges that "[n]o prudent fiduciary would agree to make its plan and participants/beneficiaries pay a price that is *two-hundred-and-fifty times* higher than the price available to any individual who just walks into a pharmacy and pays out-of-pocket." (*Id.* (emphasis in original)).  Plaintiff cites in the Amended Complaint to other large discrepancies in the Plans' pricing for certain "specialty" drugs, both branded and generic. (*Id.* ¶ 5.)  Plaintiff says no prudent fiduciary would have agreed to these terms. (*Id.* ¶ 6.)  Instead of using more reasonable, "cost-effective" options for its participants, Defendants "force[d] its benefits plans and covered employees and retirees to acquire drugs via some of the most expensive methods conceivable." (*Id.* ¶ 9.)

More specifically, Plaintiff, through the Amended Complaint, targets generic drugs, alleging that "Defendants imprudently managed the Plans' generic drug program, and failed to act in the best interest of participants/beneficiaries and ensure that expenses were reasonable" for its participants and beneficiaries. (*Id.* ¶ 91).  Plaintiff cites examples of drugs that were subject to a significant markup. (*See, e.g.*, *id.* ¶¶ 104, 106, 108, 110, 112, 114, 118, 119, 120, 121.)  It includes a detailed chart illustrating how much the Plans paid for a selection of forty-two drugs as compared to a pharmacy acquisition cost. (*Id.* ¶ 116.)

Plaintiff also accuses Defendants of mismanagement insofar as they (1) agreed to steer beneficiaries towards a mail-order pharmacy that charges higher prices than retail pharmacies for the same drug, (*id.* ¶ 129), (2) failed to incentivize the use of high-priced branded drugs in favor of lower-priced generic drugs, (*id.* ¶ 135), (3) failed to engage in a prudent and reasoned decision making process before agreeing to a PBM contract that required participants to pay a higher price for drugs, (*id.* ¶ 139), and (4) failed to adequately negotiate the Plans for lower prices, (*id.* ¶ 140).

With respect to Plaintiff herself, Plaintiff alleges that since August 2022, she has filled prescriptions for several generic non-specialty drugs and has been subject to significant cost markups for those drugs, simply because she was a participant in the Plans.  (*Id.* ¶¶ 124, 125.) Plaintiff asserts she paid more in premiums and paid more for drugs than she would have paid absent Defendants' alleged fiduciary breaches and other ERISA violations.  (*Id.* ¶ 190.)  For example, the Amended Complaint states that Plaintiff paid $303.68 for a generic drug, when that drug was also available from stores like Rite Aid and Wegmans for approximately $90.00.  (*Id.* ¶ 198; *see also id.* ¶ 199.)  Furthermore, Plaintiff alleges that until Defendants' breaches are cured, Plaintiff will be required to pay more in premiums in the future.  (*Id.* ¶¶ 196, 201.)

### B.     PROCEDURAL HISTORY

Plaintiff filed her initial Complaint on February 5, 2024.  (ECF No. 1.)   Defendants submitted a Motion to Dismiss (ECF No. 40), that was later withdrawn in light of the filing of an Amended Complaint.  (ECF No. 44.)  Thereafter, Defendants filed the instant Motion on June 28, 2024.  (ECF No. 51.)

### II.    SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and (f) because Plaintiff brings this action pursuant to ERISA.

### III.   DISCUSSION

The Amended Complaint contains three counts.  First, Plaintiff alleges that Defendants breached their fiduciary duties under 29 U.S.C. §§ 1104(a) and 1132(a)(2).  (*See generally* Am. Compl.)  Second, Plaintiff alleges that Defendants breached their fiduciary duties in violation of 29 U.S.C. §§ 1104(a) and 1132(a)(3).  (*Id.*)   Third, Plaintiff alleges that Defendants failed to provide documents upon request in violation of 29 U.S.C. §§ 1024(b)(4) and 1132(c). (*Id.*)

In the Motion, Defendants challenge both Plaintiff's standing and the adequacy of her pleading. Insofar as Plaintiff's standing is a jurisdictional issue, the Court considers this issue first. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

### A.   Whether to Dismiss Counts One and Two for Lack of Standing

The Motion challenges Plaintiff's standing on the basis that she does not allege a concrete harm or injury-in-fact. In Defendants' view, Plaintiff fails to allege that she was improperly denied benefits under the plan; she simply claims the drug prices were too expensive. (Moving Br. at 8.) More specifically, Defendants argue that Plaintiff fails to meet the constitutional standing requirements for Counts One and Two because (1) those claims show no personal harm to Plaintiff, (2) Plaintiff did not suffer any injury from the prescription drug costs, and (3) there are no allegations that Plaintiff was prescribed any of the generic specialty drugs that she claims are too expensive. (*Id.* at 12, 21.) Defendants also argue that Plaintiff did not "suffer any injury from the prices of prescription drugs obtained under the prescription drug benefit because she would have paid the exact same amount in total out-of-pocket costs each year she has participated in the Plan, regardless of the cost of the drugs. (*Id.* at 18.)

Plaintiff argues that the Amended Complaint properly alleges that she has standing because the Plans' overpayments were passed to her in the form of monthly payments that were higher than they would have been but for Defendants' breach. (Opp'n Br. at 1.) In terms of injuries, she cites her allegations that she paid more in monthly premiums and paid greater out-of-pocket expenses. (*Id.* at 13 (citing Am. Compl. ¶¶ 75, 139, 190–95, 198–200), 15, 19)).[4] Plaintiff responds to

---

[4] Defendants refute this argument in its Reply, noting that Plaintiff cannot rely on an "alleged injury from non-fiduciary conduct (setting premiums) to conjure up standing for fiduciary claims," and any connection between her premiums and the alleged breaches are speculative. (Reply Br. at 1.) Defendants also claim that Plaintiff "paid the same out-of-pocket amount each year that she would have paid even if the Plan's PBM had agreed to charge $0 for prescription drugs." (*Id.*)

5

Defendants' argument that she received what she was entitled by pointing out that this is a suit for breach of fiduciary duties not for denial of benefits. (*Id.*) Plaintiff maintains that she suffered a concrete injury once she was overcharged for her first prescription, (*id.* at 20), and that her standing is not limited to the drugs she purchased because Defendants' breach of their duty resulted in plan-wide overcharges.[5]

### 1.   Legal Principles

Article III of the United States Constitution confines the federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. Art. III. For there to be a case or controversy under Article III, the plaintiff must have a "'personal stake' in the case—in other words, standing." *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). To have standing, a plaintiff must show, (1) that he or she suffered an injury in fact that is concrete, non-hypothetical, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In order "[t]o establish [an] injury-in-fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements as to each claim. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990).[6]

---

[5] In its Reply, Defendants argue that simply because Plaintiff reached her maximum out-of-pocket limit earlier than she otherwise would have does not amount to standing because the lost time value of money is not a cognizable injury-in-fact. (Reply Br. at 8.)

[6] "In the context of a class action, Article III must be satisfied by at least one named plaintiff." *Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 359 (3d Cir. 2015); *see also O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

"In addition to having Article III standing, an ERISA plaintiff must also have statutory standing." *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 419 (3d Cir. 2013). "Statutory standing is simply statutory interpretation,' and [courts] ask whether the remedies provided for in ERISA allow the particular plaintiff to bring the particular claim." *Id.* (quoting *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007)).

When a party challenge standing, the Court's analysis depends on whether the challenge is based on a "factual attack" or a "facial attack." *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). "[A] facial attack 'contests the sufficiency of the pleadings,' 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party of Pa. v. Aichele,* 757 F.3d 347, 358 (3d Cir. 2014) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). Here, Defendants' argument that Plaintiff did not "suffer any injury from the prices of prescription drugs obtained under the prescription drug benefit because she would have paid the exact same amount in total out-of-pocket costs each year she has participated in the Plan, regardless of the cost of the drugs," (*id.* at 18), is a factual challenge because such an argument challenges Plaintiff's standing based on facts outside the pleading rather than the sufficiency of the pleading itself. Defendants' remaining arguments are facial attacks that challenge the ability of the allegations in the Amended Complaint to support Plaintiff's Article III standing.

    2.    <u>Analysis</u>

For the reasons set forth below, the Court finds that Plaintiff lacks Article III standing to pursue her claims under Counts One and Two. Plaintiff's alleged injuries are that she suffered economic harms in the form of higher premiums and out-of-pocket costs. Although economic harms are the "most obvious concrete harms," *TransUnion*, 594 U.S. at 425, Plaintiff's alleged injuries fail to meet the requirements for Article III standing. The Court will first address

Plaintiff's alleged injury of paying higher premiums, and then continue with whether her out-of-pocket losses support Article III standing.

        a)        <u>Injury in the form of higher premiums</u>

A plaintiff suing for breach of fiduciary duty under ERISA § 502(a)(2) does so as a plan representative and hence must identify an injury to the Plan and seek relief that "inures to the benefit of the plan as a whole." *Smith v. Medical Benefit Admin, Group, Inc.*, 639 F.3d 277, 282–83 (7th Cir. 2011) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)); *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (Section 502(a)(2) "does not provide a remedy for individual beneficiaries"). However, plaintiffs who themselves have not suffered an injury in fact cannot assert standing as plan representatives based on injuries to the plan. *See Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020) (finding plaintiffs had no standing to sue as representatives of the plan because "in order to claim the interests of others, the litigants themselves still must have suffered an injury in fact"); *see Perelman v. Perelman*, 793 F.3d 368, 375–76 (3d Cir. 2015) (rejecting plaintiff's claim that he need not prove individualized injury insofar as he seeks monetary equitable remedies in a "derivative" capacity on behalf of plan).

ERISA § 502(a)(3) is a "catchall" provision that "authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations." *Varity*, 516 U.S. at 490. "[C]laims demanding a monetary equitable remedy [under § ERISA 502(a)(3)] . . . require the plaintiff to allege an individualized financial harm traceable to the defendant's alleged ERISA violations." *See Perelman*, 793 F.3d at 373.

Here, Plaintiff has not suffered an injury-in-fact by alleging that "[h]arms to participants/beneficiaries have taken the form of higher premiums, higher deductibles, higher coinsurance, higher copays, and lower wages or limited wage growth." (Am. Compl. ¶¶ 190. 233.) Such an injury, at best, is speculative and hypothetical. In *Knudsen v. MetLife Grp., Inc.*, 117

8

F.4th 570 (3d Cir. 2024), the Third Circuit determined whether a plaintiff had standing when she alleged that MetLife's illegal conduct caused her to "pay higher out-of-pocket costs, mainly in the form of insurance premiums." *Id.* at 573. In that case, while the Third Circuit cautioned against reading *Thole* and *Perelman* broadly as to "categorically bar an ERISA plaintiff's assertion of injury based on increased out-of-pocket costs," the court of appeals nevertheless held that the plaintiff lacked standing because such claims alleging that there is injury in the form of higher premiums or periodic payments are entirely speculative. *Id.* at 578–79.

*Knudsen* is both controlling and dispositive. Accordingly, the Court similarly finds that Plaintiff's alleged injury—that she paid more in premiums due to Defendants' purported breach of fiduciary duty during the negotiation process of the Plans—does not support Article III standing because the "outcome of th[e] suit would not affect [Plaintiff's] future benefit payments." *See Thole*, 590 U.S. at 561. That is, the allegations about higher premiums are speculative and "stand on nothing more than supposition." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 201 (3d Cir. 2016). Plaintiff alleges that she pays premiums "equivalent to 102% of the combined employer and employee contributions for similarly situated individuals under the Plans," without any allegation or evidence of premiums on other plans or that Defendants' specific conduct resulted in the higher premiums. (*See* Am. Compl. ¶ 12.) Every mention in the Amended Complaint that Plaintiff paid more in premiums is a conclusory allegation that does not meet the requirements for Article III standing. (*See e.g., id.* ¶¶ 139, 190, 194.) Because the Court finds that Plaintiff lacks Article III standing, it does not reach ERISA standing.

Accordingly, in light of the Third Circuit's decision in *Knudsen*, the Court finds that Plaintiff lacks standing to raise Counts One and Two on the basis of her alleged payment of higher insurance premiums.

9

        b)       <u>Injury in the form of out-of-pocket costs for medication</u>

Plaintiff next claims that she suffered an injury-in-fact by paying higher prices for drugs under the Plans, thus, causing her to pay more out-of-pocket. More specifically, the Amended Complaint alleges that Plaintiff was (1) charged $303.68 for a drug available for $90.50, (Am. Compl. ¶ 198), (2) charged $18.72 for a drug available for $6.38, (*id.* ¶ 199), and (3) charged $37.19 for a drug available for $14.28. (*Id.* ¶ 200.) The Amended Complaint also states that Plaintiff has taken additional financial burdens to save money as a result of Defendants' breaches, (*id.* ¶ 217), and that Plaintiff has received fourteen prescriptions for generic drugs that were marked up by 230.05 percent above pharmacy acquisition costs. (*Id.* ¶¶ 6, 199.)

It is clear to the Court based on these allegations that Plaintiff has suffered an injury-in-fact that is traceable to Defendants' alleged ERISA violations. *See Knudsen*, 117 F.4th at 580 (noting that courts "need only apply ordinary Article III standing analysis to determine whether ERISA plaintiffs have standing." (internal quotation marks and citations omitted)); *see also TransUnion*, 594 U.S. at 425 ("The most obvious [concrete harms] are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). In plain terms, when Plaintiff spent more money on drugs at the pharmacy, which was allegedly the result of Defendants' breach of fiduciary duties, Plaintiff suffered a cognizable injury.

Notwithstanding, for the reasons set forth below, the Court finds that Plaintiff herself lacks standing based on this injury because it is not redressable by an order from this Court. *See Lujan*, 504 U.S. at 560–61 (noting that to have standing, a plaintiff must show, (1) that he or she suffered an injury in fact that is concrete, non-hypothetical, particularized, and actual or imminent; (2) that

the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief). The redressability prong of the standing analysis "looks forward" to determine whether "the injury will be redressed by a favorable decision." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 181 (2000)). "Redressability is not a demand for mathematical certainty," but it does require "a 'substantial likelihood'" that the injury-in-fact can be remedied by a judicial decision. *Id.* at 143 (quoting *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

Plaintiff's injury is not redressable because, as Defendants raise in their factual challenge to her standing, she has reached her prescription drug cap for each year she asserts in the Amended Complaint. In straightforward terms, a favorable decision would not be able to compensate Plaintiff for the money she already paid. Even if Defendants were to reimburse Plaintiff for her out-of-pocket costs on a given drug—that is, the higher amount of money she spent as a result of Defendants' breaches—that money would be owed to her insurance carrier to reimburse it for its expenditures on *other* drugs that same year. In short, there is nothing the Court can do to redress Plaintiff's alleged injury.[7]

In conclusion, the Court will **GRANT** Defendant's Motion as to Counts One and Two. Because the Court finds that Plaintiff lacks standing to bring Counts One and Two, the Court need not reach whether the Amended Complaint states a claim under Rule 12(b)(6) for those counts. Counts One and Two will therefore be dismissed without prejudice.

---

[7] The Court expresses no opinion as to the standing of a hypothetical plaintiff in the same situation who has *not* reached its annual out-of-pocket cap for expenditures.

11

### B.    Whether to Dismiss Count Three for Failure to State a Claim

Count Three asserts a claim for failure to provide documents under 29 U.S.C. §§ 1024(b)(4) and 1132(c). Defendants argue that Count Three should be dismissed because it does not adequately state a disclosure claim under ERISA insofar as it does not allege that Plaintiff made a written request for the documents. (Moving Br. at 25.) Plaintiff maintains that she states a claim because Defendants failed to timely provide documents after she repeatedly requested them in writing, and Plaintiff made a typewritten request through an online portal for the documents. (Opp'n Br. at 37–38.)

#### 1.    Legal Principles

Generally, Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211

12

(quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

    2.    <u>Analysis</u>

Section 502(c)(1)(B) of ERISA provides a statutory penalty of up to $100 a day on "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested within [thirty] days after such request. . . ." 29 U.S.C. § 1132(c)(1)(B). Upon receiving a written request from any participant or beneficiary, an administrator "shall . . . furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

> [T]o state a claim under § 502(c)(1) of ERISA, a plaintiff must allege that 1) it made a [written] request to a plan administrator, 2) who was required to provide the requested material, but 3) failed to do so within 30 days of the request. As a penal statute, the terms of § 502(c)(1) must be construed strictly, and thus, a plaintiff seeking relief under § 502(c)(1) must demonstrate compliance with each of these statutory requirements.

*Plastic Surgery Ctr., P.A. v. Cigna Health and Life Ins. Co.*, Civ. No. 17-2055, 2018 WL 2441768, at *9 (D.N.J. May 31, 2018) (alteration in original) (citation and internal quotation marks omitted).

Here, Plaintiff has plausibly alleged a failure to provide documents claim. The Amended Complaint states that "[o]n December 20, 2023, Plaintiff sent a typewritten request through the Alight online portal messaging system established by Defendants, asking that all plan documents, including the 'General/Administrative Information Plan Details' document, be mailed to her."

13

(Am. Compl. ¶ 204.)  The Amended Complaint then provides that Defendants "received and accepted Plaintiff's request," (*id.* ¶ 205), and "after this lawsuit was filed—counsel for Defendants belatedly sent Plaintiff's counsel the 'General/Administrative Information Plan Details' document, but no other documents."  (*Id.* ¶ 207.)  Plaintiff then sent another written letter to counsel on February 20, 2024 that requested:

> "all instruments under which the Salaried Medical Plan is established or operated, including the formal plan document(s), all documents constituting the summary plan description, the latest annual report, and any other document falling within the terms of § 1024(b)(4)."  The letter also requested "all instruments under which the Johnson & Johnson Group Health Plan is established or operated, including the master plan document, all documents constituting the full summary plan description, the latest annual report, and any other document falling within the terms of § 1024(b)(4)."

(*Id.* ¶ 208.)  According to the Amended Complaint, Defendants "failed to timely and completely comply with Plaintiff's written requests for documents."  (*Id.* ¶ 245.)

The Court finds that these allegations support a claim that a written request from a participant or beneficiary was made, and that Defendants failed to respond within thirty days.  (*See id.* ¶ 246 (Defendants "only belatedly provided Plaintiff with the 'General/Administrative Information Plan Details' document on February 19, 2024, more than 30 days after [Plaintiff] initially requested it and only after this suit was filed.")).  As such, the Court finds that Plaintiff has stated a claim under ERISA 502(c).  *See McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, Civ. No. 09-571, 2011 WL 4455994, at *7 (D.N.J. Sept. 23, 2011) (noting that a plaintiff must allege two essential elements to establish a violation of the duty to provide requested documents: that the plaintiff made a written request, and that the defendant failed to respond to the request within thirty days); *see also Kollman v. Hewitt Assoc.,* 487 F.3d 139, 144 (3d Cir. 2007).

Accordingly, the portion of Defendants' Motion seeking to dismiss Count Three of the Amended Complaint will be **DENIED**.

## IV.     CONCLUSION

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion (ECF No. 51). Counts One and Two will be dismissed without prejudice for lack of Article III standing. Plaintiff will be given leave to file a Second Amended Complaint within 30 days to address the deficiencies identified in this Opinion. An appropriate Order will follow.

Date: January 24, 2025

                                              s/ Zahid N. Quraishi
                                              **ZAHID N. QURAISHI**
                                              **UNITED STATES DISTRICT JUDGE**