BAILEY & GLASSER LLP
Patricia M. Kipnis
(NJSB #016962003)
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Tel. (215) 274-9331
Fax (304) 342-1110
pkipnis@baileyglasser.com

*Attorney for Proposed Amicus Curiae,*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| ANN LEWANDOWSKI and ROBERT GREGORY, on their own behalf, on behalf of all others similarly situated, and on behalf of the Johnson & Johnson Group Health Plan and its component plans, | Case No. 3:24-cv-00671-ZNQ-RLS |
| Plaintiffs, | Hon. Zahid N. Quraishi |
| v. | |
| JOHNSON AND JOHNSON and THE PENSION & BENEFITS COMMITTEE OF JOHNSON AND JOHNSON, | |
| Defendants. | |

---

## BRIEF OF AMICUS CURIAE IN SUPPORT OF PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# Table of Contents

INTEREST OF AMICUS CURIAE ..................... **Error! Bookmark not defined.**

SUMMARY OF THE ARGUMENT ........................................................2

ARGUMENT ...............................................................................4

**I.    Increased Drug Costs Resulting from Imprudent PBM Contracting is a Concrete Injury that can be Redressed by the Court** ....4

**A.** Plaintiffs suffered an injury-in-fact where the negotiated prices for the plan's covered drugs exceeded the amount that would have been charged under a prudently negotiated PBM contract ...........................5

**i.** Plaintiffs who filled a prescription for an overpriced drug and bore some or all the inflated price in the form of deductible or co-insurance requirements suffered an injury-in-fact. ...................................5

**ii.** Plaintiffs are harmed by imprudently high drug prices even when they have satisfied the plan's annual out-of-pocket maximum. .....................10

**iii.** Plaintiffs who continue to participate in the plan are harmed by imprudently high drug prices based on their status as VEBA trust beneficiaries. ................................................................11

**B.** The injuries caused by higher-than-necessary drug costs are redressable by the Court ...................................... ...............14

**i.** The Court can meaningfully redress the injuries alleged to have been caused by higher-than-necessary drug prices through the established remedy of surcharge................................................... .......14

**ii.** The Court can meaningfully redress the alleged injuries for Plaintiffs who continue to participate in the plan by using its equitable powers to reform plan administration ................................................15

CONCLUSION .............................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amara v. Cigna*,
  925 F.Supp.2d 242 (D. Conn. 2012)....................................................15

*Briscoe v. Fine*,
  444 F.3d 478 (6th Cir. 2006) ...................................................................6

*Chao v. Day*,
  436 F.3d 234 (D.C. Cir. 2006) .................................................................6

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011)...............................................................................14

*Coyne & Delany Co. v. Selman*,
  98 F.3d 1457 (4th Cir. 1996) ...................................................................6

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999)...............................................................................13

*Knudsen v. MetLife*,
  117 F.4th 570 (3rd Cir. 2024).........................................3, 4, 9, 10, 11

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)..................................................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................4, 5

*Mertens v. Hewitt Assoc.*,
  508 U.S. 248 (1993)...............................................................................15

*Perlam v. Perlam*,
  793 F.3d 368 (3d Cir. 2015) ..................................................................13

*Thole v. U.S. Bank*,
  590 U.S. 538 (2020)...........................................3, 4, 8, 12, 13, 16

*Turner v. Schneider Electric Holdings, Inc.*,
  530 F.Supp.3d 127 (D. Mass. 2021) ......................................................9

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ...............................................................9

*Uzuegbunam v. Preczewski*,
    592 U.S. 279 (2021).............................................................................14

*Wallace v. Conagra Foods*,
    747 F. 3d 1025 (8th Cir. 2014) ....................................................3, 11

**Statutes**

Employee Retirement Income Security Act of 1974 ........................................*passim*

Internal Revenue Code § 501(c)(9)..............................................................11, 12

Internal Revenue Code § 4976....................................................................12

**Other Authorities**

Allison K. Hoffman, Howell E. Jackson, & Amy B. Monahan, *A
    Public Option for Employer Health Plans* ...........................................1

Amy B. Monahan & Daniel Schwarcz, *Saving Small Employer Health
    Insurance*, 98 IOWA L. REV. 1935 (2013)..............................................1

Amy B. Monahan & Daniel Schwarcz, *Will Employers Undermine
    Health Care Reform by Dumping Sick Employees?*, 93 VA. L. REV.
    125 (2011) ...............................................................................................1

Amy B. Monahan & Barak D. Richman, *Hiding in Plain Sight:
    ERISA's Cure for the $1.5 Trillion Health Benefits Market* ...............1

Amy B. Monahan, *Why Tax High-Cost Employer Health Plans?,* 65
    TAX L. REV. 749 (2012) ..........................................................................1

*Health Plan Administrators*, J. LAW, MED., & ETHICS (*forthcoming
    2025)* ......................................................................................................1

*Pharmacy Benefit Managers: The Powerful Middlemen Inflating
    Drug Costs and Squeezing Main Street Pharmacies*, Interim Staff
    Report 11-12 (July 2024)........................................................................6

Restatement (Third) of Trusts § 94, cmt 1(b) (2012) ................................14

Restatement (Third) of Trusts § 95, cmt. b (2012) ...........................................14, 15

Restatement (Third) of Trusts § 95, cmt. c (2012) .................................................16

Treas. Reg. §1.501(c)(9)-4(d) ..................................................................12

U.S. Constitution Article III............................................................2, 4, 5, 8, 9, 11, 13

## Interest of *Amicus Curiae*

*Amicus* is an academic expert on the Employee Retirement Income Security Act of 1974 ("ERISA"), with a particular focus on ERISA's regulation of group health plans. She currently serves as the Melvin C. Steen Professor of Law and a Distinguished McKnight University Professor at the University of Minnesota and is an elected fellow of the American College of Employee Benefits Counsel as well as an elected member of the American Law Institute. *Amicus* has written extensively on the regulation of employer-provided health plans, including ERISA's fiduciary duties. *See, e.g.*, Amy B. Monahan & Barak D. Richman, *Hiding in Plain Sight: ERISA's Cure for the $1.5 Trillion Health Benefits Market*, 42 YALE J. REG. 234 (2024); Barak D. Richman, Amy B. Monahan, Jeffrey Pfeffer, & Sara Singer, *ERISA and the Failure of Employers to Perform Their Fiduciary Duties: Evidence from a Survey of Health Plan Administrators*, J. LAW, MED., & ETHICS (*forthcoming* 2025); Allison K. Hoffman, Howell E. Jackson, & Amy B. Monahan, *A Public Option for Employer Health Plans*, 20 YALE J. HEALTH POL'Y, L., & ETHICS 299 (2021); Amy B. Monahan & Daniel Schwarcz, *Saving Small Employer Health Insurance*, 98 IOWA L. REV. 1935 (2013); Amy B. Monahan, *Why Tax High-Cost Employer Health Plans?,* 65 TAX L. REV. 749 (2012); Amy B. Monahan & Daniel Schwarcz, *Will Employers Undermine Health Care Reform by Dumping Sick Employees?*, 93 VA. L. REV. 125 (2011).

This case, which is the first of its kind to be filed, has significant implications for the ability of employees and other health plan participants to hold employers responsible for the fiduciary decisions they make when selecting health plan vendors, a critical piece of ERISA's participant protections. Consistent with her scholarly interests and expertise, *Amicus* submits this brief on the issue of Article III standing where a plaintiff has alleged a breach of fiduciary duty with respect to the selection of a pharmacy benefits manager.

## Summary of the Argument

Plaintiffs have Article III standing for their breach of fiduciary duty claims because they allege concrete financial injuries resulting from Defendant's conduct that are redressable by the Court.

Plaintiffs allege that Defendant breached its fiduciary duties under ERISA by failing to effectively negotiate the drug prices to be charged to the plan and its participants when it selected a pharmacy benefits manager to administer its prescription drug benefits.

There are at least two types of concrete, individualized harm alleged by Plaintiffs resulting from the breach. First, because the plan imposes participant cost sharing that varies based on the negotiated price of the drug rather than being fixed in amount, any participant who filled a prescription and was charged a price exceeding that which would have been negotiated by a prudent fiduciary has

suffered a concrete and individualized financial harm. Even those participants who subsequently met the plan's maximum out-of-pocket spending limit were harmed by imprudently high drug prices because those participants were deprived of the use of their money from the time they filled the prescription to the time the out-of-pocket maximum was satisfied. Nothing in relevant law suggests that a plaintiff being denied the use of funds that rightfully belongs to them, even for a relatively brief period, is insufficient harm for purposes of standing. Instead, courts emphasize that "a few pennies" are enough to meet the standing threshold for harm. *Knudsen v. MetLife*, 117 F.4th 570, 580 (3rd Cir. 2024) (quoting *Wallace v. Conagra Foods*, 747 F. 3d 1025, 1029 (8th Cir. 2014).

Second, because plan benefits are funded through a voluntary employee benefits association (VEBA), plan participants suffer harm in the form of diminished trust assets resulting from all imprudently priced prescriptions paid for by the plan. Crucially, no part of a VEBA's assets may revert to the employer and must instead be paid solely for plan benefits or directly to participants. As a result, current plan participants have an interest in the trust corpus and are harmed when a fiduciary breach reduces trust assets.

This case is distinguishable from *Thole v. U.S. Bank*, 590 U.S. 538 (2020), which denied standing to defined benefit pension plan participants who experienced no change in their fixed benefits. Unlike in *Thole*, Plaintiffs here

3

directly bear the financial burden of imprudent plan management through elevated out-of-pocket costs for plan benefits and are eligible to receive a reversion of excess trust assets. Nor is the alleged harm speculative, as it was *in Knudsen v. MetLife*, 117 F.4th 570 (3d Cir. 2024). Plaintiffs do not rely on speculative future plan amendments but instead allege present, quantifiable harm under the existing plan structure.

Plaintiffs' injuries are redressable through well-established equitable remedies available under ERISA, including surcharge to compensate for financial harm and various forms of oversight and reform of plan administration. These remedies are grounded in the common law of trusts and are expressly recognized as appropriate equitable relief under Supreme Court precedent.

## Argument

### I.    Increased Drug Costs Resulting from Imprudent PBM Contracting is a Concrete Injury that can be Redressed by the Court.

Where a plaintiff alleges a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), they must satisfy not only the statutory standing requirements, but also those of Article III of the U.S. Constitution. *Thole*, 590 U.S. at 541. At issue in this case are the constitutional standards, which require a plaintiff to demonstrate an injury-in-fact that was likely caused by the defendant and that is redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

4

The basic allegation in the Plaintiffs' second amended complaint is that the Defendant, in selecting a pharmacy benefits manager ("PBM") to administer the prescription drug benefits under its group health plan, failed to abide by ERISA's fiduciary duty of prudence, which breach resulted in higher-than-necessary prescription drug costs for both plan participants and the plan's trust fund. As detailed below, these allegations are sufficient to support Article III standing. Because the second element, causation, appears non-controversial, only the injury and redressability factors are discussed below.

### A. Plaintiffs suffered an injury-in-fact where the negotiated prices for the plan's covered drugs exceeded the amount that would have been charged under a prudently negotiated PBM contract.

#### i. Plaintiffs who filled a prescription for an overpriced drug and bore some or all the inflated price in the form of deductible or co-insurance requirements suffered an injury-in-fact.

To establish an injury-in-fact for purposes of Article III standing, the plaintiff must allege a harm that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. This standard is easily satisfied where a breach of fiduciary duty has caused a health plan participant to face increased out-of-pocket expenses for covered benefits.

Group health plans almost always impose various forms of participant cost-sharing on covered services. Typically, employer plans impose an annual deductible that must be satisfied before the plan will begin paying benefits, and

either fixed or variable cost-sharing on specific types of covered services. Co-payments denominated in dollars are the most common form of fixed cost-sharing, while co-insurance that requires a plan participant to pay a specific percentage of the negotiated cost of the covered treatment or service is variable cost-sharing. An employer's decision to set a plan's cost-sharing structure, such as the dollar amount of deductibles or the percentage of any co-insurance, is considered a settlor function and therefore is not subject to ERISA's fiduciary duties. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

An employer's selection of a service provider for the health plan, such as an insurer, third-party administrator, or pharmacy benefits manager, is a fiduciary action subject to ERISA's fiduciary duties. U.S. Dept. of Labor, Understanding Your Fiduciary Responsibilities Under a Group Health Plan (2024). *See also Chao v. Day*, 436 F.3d 234 (D.C. Cir. 2006); *Briscoe v. Fine*, 444 F.3d 478, 487-88 (6th Cir. 2006); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996). Here, the alleged fiduciary breach concerns the process by which the plan's PBM contract was negotiated.

When an employer selects a PBM to administer its prescription drug benefits, part of what the employer is contracting for is the price that will be charged for covered drugs when filled at a network pharmacy. Federal Trade Comm'n, *Pharmacy Benefit Managers: The Powerful Middlemen Inflating Drug*

*Costs and Squeezing Main Street Pharmacies*, Interim Staff Report 11-12 (July 2024).  The negotiated drug prices, which vary significantly by contract, obviously impact the overall expense of plan benefits, which in turn affects plan premiums. But they also directly impact any participant who fills a prescription subject to an annual deductible or cost-sharing that varies with the negotiated drug price.

Assume, for example, that an employer retains a PBM that charges $1,000 for a 90-day supply of a medication that has a retail price of $100, and the employer plan has a $500 annual deductible plus a 20% co-insurance requirement applicable to prescription drugs. When a plan participant fills their prescription for the medication at the pharmacy, they will be responsible first for the $500 deductible, plus 20% of the remaining $500 price, for a total out-of-pocket expense of $600. In comparison, if the plan had retained a PBM that charged only the $100 price, the participant would pay only $100 for the same medication. The result is that plan participants are always made worse off by higher PBM drug prices where participants are responsible for either an annual deductible or co-insurance on prescription drugs.

This higher cost to the participant cannot be avoided simply by paying the cash pay price, $100 in the above example, because electing to do so results in the amount paid not being counted toward the participant's annual deductible or annual

7

out-of-pocket maximum, which simply creates a different type of financial harm for the participant.

The nature of the financial harm distinguishes this case from *Thole v. U.S. Bank*, 590 U.S. 538 (2020). In *Thole,* the Court held that defined benefit pension plan participants alleging a breach of fiduciary duty under ERISA lacked Article III standing because they had not plausibly alleged a concrete and individualized harm. In a defined benefit pension plan a participant is ultimately entitled to only a fixed dollar benefit, and the fact that a fiduciary breach may have resulted in the loss of plan's assets does not change the financial value of the participants' benefits. In contrast, an alleged breach of fiduciary duties that raises the cost of underlying medical care or services in a health plan that imposes cost-sharing directly reduces the value of the benefits to which the participant would otherwise be entitled. To return to the example used above, if a participant would have paid $100 out-of-pocket for a prescription if the fiduciaries had prudently negotiated drug prices, but must instead pay $600 for the same covered drug because of a fiduciary breach, that participant has been directly harmed.

Rather than looking to *Thole,* the better analogy is to 401(k) plan fee litigation, where plan participants have successfully recovered where plan fiduciaries agreed to administrative fees that were above those that would have been secured by a prudent fiduciary, thereby directly reducing the value of a

participant's plan benefit. *See, e.g.*, *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014); *Turner v. Schneider Electric Holdings, Inc.*, 530 F.Supp.3d 127, 136 (D. Mass. 2021).

This case is also different from the recent Third Circuit decision in *Knudsen v. MetLife*, 117 F.4th 570 (3rd Cir. 2024). *Knudsen* considered whether plaintiffs, who were group health plan participants, had alleged facts sufficient to support Article III standing where they alleged the plan sponsor breached its fiduciary duties by contracting with the PBM to remit to the employer the rebates the PBM received from drug manufacturers for covered plan drugs, rather than requiring such rebates to be paid to the plan. Although the Third Circuit held the plaintiffs lacked standing, the allegations were fundamentally different than those in the case before this Court. The plaintiffs in *Knudsen* did not allege that the retention of rebates by the employer directly led to a plan participant paying more out-of-pocket when they filled prescriptions. Instead, plaintiffs speculated that if rebates were paid to the plan rather than the employer, the plan would be less expensive for the employer to offer and, faced with lowered expenses, the employer would choose to make the plan more generous for plan participants, by taking actions such as lowering annual deductibles or co-insurance percentages. Because the alleged harm was premised on changes to plan design or premium amounts the employer might voluntarily make if the plan directly received drug rebates, the

9

Third Circuit found the harm to be merely speculative. *Id*. at 580. In this case, there is no need to speculate about what plan design decisions the employer might make in the future, because the alleged breach of fiduciary duty led to a direct increase in out-of-pocket spending for plan participants who filled prescriptions for overpriced drugs under the plan design already in place.

### ii. Plaintiffs are harmed by imprudently high drug prices even when they have satisfied the plan's annual out-of-pocket maximum.

Many group health plans, including the one at issue in the case, place an annual cap on the maximum amount that a participant will have to pay out-of-pocket for covered expenses, known simply as a an "out-of-pocket maximum." For example, a plan might have a $1,000 deductible, a 20% co-insurance requirement, and a $5,000 out-of-pocket maximum. Once a participant has paid $5,000 toward covered expenses through a combination of the deductible and co-insurance requirements, the plan will pay 100% of any further expenses.

The fact that a participant who has faced higher-than-necessary out-of-pocket costs for prescription drugs subsequently satisfies their plan's out-of-pocket maximum for the year does not undo the actual and concrete harm suffered. Assume, for example, that a plaintiff fills a prescription in January and pays $100 more at the pharmacy counter than she would have if the PBM contract was prudently negotiated. If that plaintiff has other covered plan expenses during the

year that result in her meeting the plan's out-of-pocket maximum, it is possible that the participant's total out-of-pocket spending for prescription drugs for the entire year is not more than she would have paid under a prudently negotiated PBM contract, because her expenses are so high that she would have had to pay the full out-of-pocket maximum even if all plan prices were prudent. Nevertheless, such participants have suffered a concrete harm for purposes of Article III because they were deprived on the use of their money between the time they filled the overpriced prescription and the time their total out-of-pocket spending for the year became equal to what it would have been absent a fiduciary breach. There is no question that withholding funds that rightfully belong to a plaintiff, even for a relatively limited time, constitute a financial harm and such harm, "even if only a few pennies,…is a concrete, non-speculative injury." *Knudsen,* 117 F.4th at 580 (quoting *Wallace v. Conagra Foods*, 747 F. 3d 1025, 1029 (8th Cir. 2014)).

### iii. Plaintiffs who continue to participate in the plan are harmed by imprudently high drug prices based on their status as VEBA trust beneficiaries.

Employer-sponsored group health plans are financed in various ways. In this case, the plan is funded through the use of a voluntary employee benefits association (VEBA) organized pursuant to section 501(c)(9) of the Internal Revenue Code of 1986. The special nature of a VEBA results in current plan participants being able to satisfy the injury-in-fact requirement on the basis of

imprudently high drug prices alone, not dependent on a specific participant's out-of-pocket spending, because such participants have a claim on all trust assets and can therefore establish harm when the *trust* pays more than a prudent amount for a covered drug.

A VEBA is a tax-exempt entity organized to pay "life, sick, accident, or other benefits to members of such association." IRC § 501(c)(9). Notably, no part of the net earnings of the VEBA may inure to the benefit of any private shareholder or individual, other than through the payment of the life, sick, accident, or other benefits specifically permitted. *Id.* Upon termination of the plan or dissolution of the VEBA, any assets remaining after satisfaction of all liabilities to existing beneficiaries remain subject to the anti-inurement rule. As a result, such excess assets must be used to either provide insurance, life, sick, accident, or other benefits to members or be distributed to members in a nondiscriminatory manner. Treas. Reg. §1.501(c)(9)-4(d). If the written terms of the VEBA provide that assets may revert to its members' contributing employers, the trust fails to qualify as a VEBA. *Id.* In fact, the Internal Revenue Code imposes a 100% excise tax on any purported reversions from a VEBA to its contributing employers. IRC § 4976.

That excess VEBA assets may not revert to the employer makes such trusts fundamentally different than the defined benefit plan trusts discussed in *Thole.* In *Thole,* the Supreme Court held that participants in a defined benefit pension plan

lacked Article III standing to bring a breach of fiduciary duty claim on the basis that plaintiffs would be in exactly the same position whether they won or lost the lawsuit and therefore had not plausibly alleged harm. In part, this was based on the fact that participants in a defined benefit plan are not entitled to any excess trust assets. As the Court explained, "the employer, not plan participants, receives any surplus left over after all of the benefits are paid…The trust-law analogy therefore does not fit this case and does not support Article III standing for plaintiffs." Thole, 590 U.S. at 543. The Third Circuit employed similar reasoning in *Perlam v. Perlam,* 793 F.3d 368 (3d Cir. 2015), explaining that a defined benefit plan participant is not entitled to standing solely based on a diminution in plan assets because "participants in such a plan are entitled only to a fixed periodic payment, and have no 'claim to any particular asset that composes a part of the plan's general asset pool.'" *Id*. at 374 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999)).

Participants in a VEBA *are* entitled to surplus trust assets, which can either be paid in cash to VEBA beneficiaries or used to finance VEBA benefits. The structure of a VEBA therefore supports a cognizable injury to any continuing plan participant where the plan overpays for prescription drugs as the result of imprudent fiduciary decisionmaking. Such a result is consistent with general principles of trust law, which allow any beneficiary whose "rights are or may be

13

adverse affected by" the breach, including "a person who is eligible to receive a discretionary distribution…or who holds a reversionary interest." Restatement (Third) of Trusts § 94, cmt 1(b) (2012).

### B. The injuries caused by higher-than-necessary drug costs are redressable by the Court.

For a plaintiff to have standing, a court must be able to "provid[e] a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021). As applied to this case, Plaintiffs' injuries could be redressed through compensation in the form of surcharge, as well as ordering specific performance to oversee or reform the defendant's PBM contracting process.

#### i. The Court can meaningfully redress the injuries alleged to have been caused by higher-than-necessary drug prices through the established remedy of surcharge.

The Court is able to redress the injuries caused by imprudently high drug prices through the remedy of surcharge, which is "a form of monetary compensation for a loss resulting from a trustee's breach of duty" that the Supreme Court has explicitly acknowledged is an available remedy under section 502(a)(3) of ERISA. *CIGNA Corp. v. Amara*, 563 U.S. 421, 441-42 (2011). *See also* Restatement (Third) of Trusts § 95, cmt. b (2012); George Gleason Bogert, George Taylor Bogert, & Amy Morris Hess, The Law of Trusts and Trustees § 862 (July 2024 update).

Consistent with trust law principles, which are incorporated into ERISA, the remedy of surcharge attempts to put the trust beneficiary in the position they would have been in absent the breach, and therefore is considered "make-whole relief." *Amara v. Cigna*, 925 F.Supp.2d 242, 255-56 (D. Conn. 2012). *See also* Restatement (Third) of Trusts § 95, cmt. b (2012) ("If a breach of trust causes a loss…the beneficiaries are entitled to restitution and may have the trustee surcharged for the amount necessary to compensate fully for the consequences of the breach"). Where the alleged harm is the failure to prudently negotiate drug prices, the "loss" suffered by the plan and its participants is the difference between the drug prices paid pursuant to the imprudent PBM contract and the amount that would have been paid under a prudent contract, taking into account the time value of money where relevant.

> ii. **The Court can meaningfully redress the alleged injuries for Plaintiffs who continue to participate in the plan by using its equitable powers to reform plan administration.**

The Supreme Court has held that section 502(a)(3) of ERISA allows a court to award those remedies that were "typically available in a court of equity." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256 (1993). Among those remedies specifically named by the Supreme Court as typically available in equity are injunction and mandamus, and the Restatement (Third) of Trusts offers many examples of equitable remedies available for breach of trust, including "directing

the trustee to administer the trust" in a particular manner; "enjoining the trustee to take or refrain from taking certain action(s)"; "setting aside an improper action of the trustee"; "appointing an additional trustee or a successor co-trustee"; and appointing a "special fiduciary" to oversee the trust. Restatement (Third) of Trusts § 95, cmt. c (2012).

While it is in the Court's discretion how best to structure equitable relief, it is clear for purposes of standing that the Court would be able to meaningfully redress the alleged harm of Plaintiffs who continue to participate in the plan by taking steps to reform or oversee various aspects of the plan's PBM contracting process.

## Conclusion

Plaintiffs have plausibly alleged concrete, particularized injuries resulting from Defendant's breach of fiduciary duty under ERISA. Unlike in *Thole*, the alleged fiduciary breach in this case has caused direct financial harm to plan participants in the form of increased out-of-pocket costs for prescription drugs and a diminution of VEBA assets that inure solely to the benefit of plan participants. These injuries are not speculative and are redressable through equitable remedies, including surcharge and fiduciary oversight, that fall squarely within the scope of ERISA § 502(a)(3) and traditional trust law.

Dated: May 27, 2025 **BAILEY & GLASSER LLP**

*/s/ Patricia Mulvoy Kipnis*
Patricia Mulvoy Kipnis (NJSB #016962003)
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Telephone: (215) 274-9331
Facsimile: (304) 342- 1110
pkipnis@baileyglasser.com

*Attorney for Proposed Amicus Curiae*
Prof. Amy B. Monahan
Amicus Curiae
University of Minnesota Law School
229 19th Avenue South
Minneapolis, MN 55455
(612) 624-1261
monahan@umn.edu

17